Samuel VANERSON, Appellant,

v.

Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.

No. 97–1582.

United States Court of Appeals for Veterans Claims.

March 18, 1999.

Samuel M. Tumey was on brief for appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; and Mary Ann Flynn, Acting Deputy Assistant General Counsel, were on brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

HOLDAWAY, Judge, filed the opinion of the Court. NEBEKER, Chief Judge, filed a separate opinion concurring in part and dissenting in part.

HOLDAWAY, Judge:

The appellant, Samuel Vanerson, appeals the August 1997 decision of the Board of

Veterans' Appeals (Board or BVA) which determined that he was not entitled to service connection for a seizure disorder. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will vacate the decision of the Board and remand the matter for readjudication.

## I. FACTS

The appellant served on active duty in the U.S. Army from July 1979 to February 1981. No abnormalities were noted on his entrance medical examination. The appellant filled out a report of medical history denying pre-service epilepsy, fits, or loss of consciousness. He indicated that he was in good health and was not taking any medication. On an October 1979 medical history report, the veteran answered "yes" to a question about whether he had ever been treated for "convulsions (epilepsy)." Next to his answer he wrote, "Will explain." However, no explanation is in the record. He also noted that he had been hospitalized within the past five years for aftereffects of shots he had received.

In January 1980, he sought treatment at an Army health clinic after his roommate had told him that his body had "gone limp" and that he could not move his body three different times that evening. The appellant told the medical examiner that he had had seizures three months before, in basic training, and had been given medication for it during advanced individual training. In February 1980, the appellant was brought to the health clinic by ambulance after he had suffered a seizure in the mess hall. The treating physician noted that the veteran had been on an unknown seizure medicine when he was a civilian and had had similar episodes every four to five months. The physician also noted that the appellant was slightly confused and sleepy, but would answer questions even though his speech was slightly slurred. He was diagnosed with grand mal seizures. Two weeks later the appellant suffered another seizure. An electroencephalogram was ordered, and its results were interpreted as normal. The appellant continued suffering from periodic seizures. His medical records noted that several times he had failed to take his seizure medication. In November 1980, he was hospitalized for five days and diagnosed with "seizures, generalized, tonic-clonic, primary." A medical narrative summary dated December 4, 1980, reported that he complained of loss of consciousness and then stated the following:

> This has happened about a dozen times since 1974. Episodes are preceded by dizziness and are followed by confusion, amnesia for the time of unconsciousness, and soreness of the arms, legs, and chest....
> Phenytoin was given to him in 1979[,] but he had taken it only sporadically since then and the seizures have continued. On one occasion[,] he omitted the drug for a single day and had a seizure.

The reporting physician opined that the appellant was medically unacceptable for further military service. An Army medical board also found that the appellant was medically unfit for further service due to epileptic seizures, grand mal. The board found that his condition had begun approximately in 1974, had preexisted service, and had not been aggravated by service. On December 31, 1980, the appellant signed a statement that he did not agree with the medical board's action and that he desired an appeal. However, there is no evidence in the record that the veteran submitted an appeal. The appellant was discharged in February 1981.

On February 10, 1981, the appellant arrived at a VA medical facility by ambulance. His speech was slurred and he could not comprehend questions. His sister stated that he had had a seizure in his sleep. The examining physician noted that the appellant had had a four-year history of a seizure disorder. On February 11, 1981, the appellant filed an application for VA benefits seeking service connection for his seizure disorder. On his application he reported that his seizures had begun in 1974, but had become worse while in service. He also stated that before service he had not taken any medication. A VA regional office (VARO) found that his disorder had preexisted service and had not been aggravated by service, and denied his claim. He did not appeal that decision. In November 1983, the appellant submitted childhood medical reports from

1960 to 1969, which did not indicate that he had been treated for epileptic seizures. The VARO issued a confirmed rating in December 1983.

In June 1993, the appellant filed with the VARO a request to reopen his claim for service connection for his seizure disorder which he alleged began in 1979 while on active duty. The VARO received a statement from the appellant's service representative explaining that the veteran had not understood the form he had signed on December 31, 1980, which stated that he was being discharged for a disability that had existed prior to service and had not been aggravated by service. The service representative stated that the veteran had indicated that he had not had seizures prior to service, and that he had signed the document at a time when a seizure had occurred. The service representative also alleged that the appellant was not given the opportunity to appeal the medical board's decision. Attached to the service representative's statement was a Department of the Army Form 2496, Application for Expeditious Discharge, signed by the veteran on December 31, 1980. The form stated that the appellant understood that the medical board had found that he was not qualified for retention in the military due to a physical disability that existed prior to service and was not aggravated by service. The form also stated that the appellant acknowledged that he was waiving his right to appeal the medical board's decision. In July 1993, the appellant submitted duplicate service medical records and post-service treatment records from 1981 to 1993.

At an October 1993 VA hearing, the appellant testified that he had experienced his first seizure in 1979 while in basic training at Fort Gordon, Georgia. He also testified that he did not understand the expeditious discharge form he had signed because he was still recovering from a seizure. He also stated that sometimes it takes two to three days for him to fully recover and he had signed the form twelve to twenty-four hours after he had had a seizure. He explained that in 1974 he was fourteen years old and that he had not had any seizures.

The appellant submitted nine separate statements from individuals asserting that they had known him since the early 1970's, and had never known him to have seizures. Included were statements from his mother and father, who both stated that he had not had seizures prior to his entry into the service. He also submitted his high school records from 1972 to 1976, including health records that did not mention any care for seizures.

In December 1993, the VARO denied the appellant's request to reopen his claim for service connection for a seizure disorder. One week later, the appellant filed a Notice of Disagreement with the VARO. In February 1994, he filed a substantive appeal to the BVA. At a subsequent VARO hearing in April 1994, the appellant testified that the reason he had stated during service that he had had seizures prior to service was because he was confused, disoriented, and on heavy medication. He stated that he does not recall making those statements. He also testified that at the time he filed his application for benefits in 1981, he was in the hospital and was confused and medicated. He stated that someone was helping him fill out the application and told him what to put on the form. He again asserted that prior to service, he did not suffer from a seizure disorder. The hearing officer confirmed that the appellant had not submitted new and material evidence to reopen his claim for service connection of his seizure disorder.

In January 1996, the veteran testified before a member of the Board. He related again that he had not suffered from seizures prior to service and did not recall ever stating during service that he had begun having seizures in 1974. In June 1996, the Board determined that the appellant had submitted new and material evidence. The Board remanded his claim for service connection to the VARO for a comprehensive VA medical examination to discuss the etiology of his seizure disorder and whether the disorder had increased in severity during service.

The appellant was examined by a VA neurologist in July 1996 who noted that the appellant had been treated at that VA medical facility for seizures since at least the

early 1980's. The neurologist also noted that "[t]he old records that we have for review claim in several places that his seizures date back to 1974[,] which is a number of years before service." The neurologist then stated:

> The records suggest onset before he entered the service. The patient disputes this. The patient, however, is not a good historian. I cannot shed any further light on this situation and have to refer it back to the people who make administrative decisions as to whether or not this seizure disorder should be considered service connected. It does not appear as if the seizures are less controlled at this time than they were when the patient was first seen here in the early 1980's.

In October 1996, the VARO denied his claim for service connection for his seizure disorder on the merits.

On appeal to the BVA, the Board denied the appellant's claim for service connection. The Board determined that the appellant's seizure disorder had existed prior to service and had not been aggravated by his military service

## II. ANALYSIS

The appellant argues (1) that the evidence of preservice inception of his seizure disorder lacked sufficient weight and credibility to rebut the presumption of soundness, (2) that the Board used the wrong standard of proof in determining that the presumption of soundness was rebutted, (3) that the Board's determination that the disorder did not increase in severity was clearly erroneous, and (4) that the July 1981 VARO decision denying his claim for service connection for the seizure disorder was clear and unmistakable error. The Secretary responds that, as a matter of law, the evidence considered by the Board was sufficient to rebut the presumption of soundness and that the Board's determination that the seizure disorder did not increase in severity has a plausible basis in the record. The Secretary also argues that the Court lacks jurisdiction to consider the appellant's allegations of clear and unmistakable error because the issue was not reasonably raised before the Board.

### A. Presumption of Soundness

■ A veteran will be paid VA compensation benefits for a disability caused by a disease or injury incurred or aggravated by active military service during peacetime. *See* 38 U.S.C. § 1131. "[E]very person employed in the active military ... for six months or more shall be taken to have been in sound condition when examined, accepted and enrolled for service except as to defects, infirmities, or disorders noted at the time of the examination, acceptance and enrollment." 38 U.S.C. § 1132. This presumption of soundness can be rebutted by the Secretary if there exists clear and unmistakable evidence demonstrating that an injury or disease existed prior to entrance into service. *See* 38 C.F.R. § 3.304(a) (1998). The term "'[c]lear and unmistakable evidence' describes the burden of proof, at a fact-finding level, necessary to overcome a presumption." *Akins v. Derwinski,* 1 Vet.App. 228, 231 (1991).

#### 1. Standard of Proof

It is unclear from the Board's decision what burden of proof it actually used in reaching its conclusion that the presumption of soundness had been rebutted. The Board began its analysis of the facts by stating that "the medical evidence of record *clearly and convincingly* establishes that a seizure disorder pre[ ]existed the appellant's period of military service." (Emphasis added.) The "clear and convincing" burden of proof, while a higher standard than a preponderance of the evidence, is a lower burden to satisfy than clear and unmistakable evidence. "Clear and convincing" means there is a "reasonable certainty" of the truth of the fact in controversy. *See* BLACK'S LAW DICTIONARY 251 (6th ed.1990) (defining "clear and convincing proof"). On the other hand the word "unmistakable" means that an item cannot be misinterpreted and misunderstood, i.e., it is undebatable. *See* WEBSTER'S NEW WORLD DICTIONARY 1461 (3rd Coll. ed.1988); *cf. Crippen v. Brown,* 9 Vet.App. 412, 418 (1996) (stating that "clear and unmistakable error" means an error that is undebatable); *Russell v. Principi,* 3 Vet.App. 310 (1992) (en banc) ("The words 'clear and unmistakable error'

are self-defining. They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed."). Therefore, while the Board later concluded that the presumption of soundness was rebutted by clear and unmistakable evidence, the Board's legal analysis in this matter was flawed by its earlier finding of the clear and convincing evidence.

■ In addition, after determining that the presumption had been rebutted, the Board determined under the "preponderance of the evidence" standard that the medical history of preservice inception that was recorded during service and shortly thereafter was "more probative" than the personal testimony, lay statements, and later-dated medical records indicating a postinduction onset of the seizure disorder. However, the Secretary's regulatory interpretation of how to apply the presumption of soundness reflects an understanding that rebuttal of the presumption must involve an impartial and thorough review of all the evidence of record. Section 3.304(b) states:

(1) History of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions but will be considered together with *all other material evidence in determinations as to inception.* Determinations should not be based on medical judgment alone as distinguished from accepted medical principles, or on history alone without regard to clinical factors pertinent to the basic character, origin[,] and development of such injury or disease. They should be based on *thorough analysis of the evidentiary showing and careful correlation of all material facts,* with due regard to accepted medical principles pertaining to the history, manifestations, clinical course, and character of the particular injury or disease or residuals thereof.

(2) History conforming to accepted medical principles should be given due consideration, in conjunction with basic clinical data, and be accorded probative value consistent with acceptable medical and evidentiary principles in relation to value consistent with accepted medical evidence relating to incurrence, symptoms[,] and course of the injury or disease, including official and other records made prior to, during[,] or subsequent to service, *together with all other lay and medical evidence concerning inception, development [,] and manifestations of the particular condition will be taken into full account.*

38 C.F.R. § 3.304(b) (emphasis added). This regulation directs VA adjudicators to consider all of the relevant evidence of record when determining whether clear and unmistakable evidence exists to rebut the presumption of soundness, not just the persuasiveness of the evidence supporting preservice incurrence of the disease or injury. *See Crowe v. Brown,* 7 Vet.App. 238, 245–46 (1994) ("In determining whether there is clear and unmistakable evidence that the injury or disease existed prior to service, the Court considers the history recorded at the time of examination together with 'all other material evidence.'") (quoting 38 C.F.R. § 3.304(b)(1)); *Parker v. Derwinski,* 1 Vet.App. 522, 524–25 (1991) (holding that the Board must analyze the medical opinions it was relying on to rebut the presumption of soundness "in the context of all the evidence of record," including the appellant's sworn testimony that the service medical doctor had misinterpreted his statement). The weight and credibility of the evidence indicating postinduction inception of the disease or injury must be evaluated in terms of what effect it has on the persuasiveness of the evidence of preservice inception.

■ In general, this Court defers to VA's regulatory interpretation of a statute when it is consistent with the language of the statute and the interpretation is reasonable. *See Winn v. Brown,* 8 Vet.App. 510, 515 (1996); *see also Hodge v. West,* 155 F.3d 1356, 1361 (Fed.Cir.1998). The statutory language states that every veteran will be accepted to have been in sound condition when entering service unless the defect was noted at the time of entrance into service or "where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment." 38 U.S.C. § 1111. There is nothing in the language of the statute that is inconsistent with the Secretary's regulatory requirements for rebutting the

presumption of soundness. Therefore, the interpretation must be upheld if it is a reasonable construction of the statute. *See Hodge* and *Winn,* both *supra.*

Recently, in *Routen v. West,* 142 F.3d 1434, 1440 (Fed.Cir.), *cert. denied,* — U.S. ——, 119 S.Ct. 404, 142 L.Ed.2d 328 (1998), the United States Court of Appeals for the Federal Circuit described the "traditional" view of how presumptions function:

> The presumption affords a party, for whose benefit the presumption runs, the luxury of not having to produce specific evidence to establish the point at issue. When the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption. *See 1 Weinstein's Federal Evidence* § 301.02[1], at 301–7 (2d ed.1997); 2 *McCormick on Evidence* § 342, at 450 (John W. Strong ed., 4th ed.1992). However, when the opposing party puts in proof to the contrary of that provided by the presumption, and that proof meets the requisite level, the presumption disappears. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *A.C. Aukerman* [*Co. v. R.L. Chaides Constr. Co.*], 960 F.2d [1020, 1037 (Fed.Cir.1992) ] ("A presumption ... completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact."); *see also Weinstein's Federal Evidence* § 301App.100, at 301App.—13 (explaining that in the bursting bubble theory once the presumption is overcome, then it disappears from the case). [Additional citations omitted.]

The party originally favored by the presumption is now put to his factually-supported proof. This is because the presumption does not shift the burden of persuasion, and the party on whom the burden falls must ultimately prove the point at issue by the requisite standard of proof. *See* Fed.R.Evid. 301; *A.C. Aukerman,* 960 F.2d at 1038–39. *But see McCormick on Evidence* § 344, at 470–72 (describing an alternative to the bursting bubble rule in which application of a presumption shifts the burden of persuasion);

Edmund M. Morgan, *Presumptions,* 12 Wash. L.Rev. 225 (1937).

The Federal Circuit's explanation was used to illustrate why a presumption is not treated as evidence. *See id.* However, the Federal Circuit was not setting precedent on the required application of presumptions in veterans law jurisprudence. *Cf. Collette v. Brown,* 82 F.3d 389 (Fed.Cir.1996) (analyzing the application of the presumption of in-service incurrence under 38 U.S.C. § 1154(b)). The traditional model of presumptions, adopted in Rule 301 of the Federal Rules of Evidence, fits an adversarial process of adjudication where the parties assume distinct burdens of production and persuasion. However, the legislative history of the Veterans' Judicial Review Act, Pub.L. No. 100–687, 102 Stat. 4105 (1988), indicates that adversarial concepts of adjudication were not to be adopted into the VA adjudication system:

> Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits.... I[m]plicit in such a beneficial system has been an evolution of a completely ex parte system of adjudication in which Congress expects VA to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits. Even then, VA is expected to resolve all issues by giving the claimant the benefit of any reasonable doubt. *In such a beneficial structure there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusions, or strict adherence to burden of proof.*

*Manio v. Derwinski,* 1 Vet.App. 140, 144 (1991) (quoting H.R.REP. No. 100–963, at 13, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795) (emphasis added in *Manio* decision); *see also Flynn v. Brown,* 6 Vet.App. 500, 503–04 (1994) (holding that the federal rules of hearsay were "not applicable applicable to the BVA decision-making process").

 In veterans law, after a veteran produces evidence of a well-grounded claim, the burden of production is actually shared by the Secretary through the duty to assist. *See* 38 U.S.C. § 5107(a); *see also* 38 U.S.C. § 7722(d) ("The Secretary shall provide, to the maximum extent possible, aid and assis-

tance (including personal interviews) to members of the Armed Forces, veterans, and eligible dependents ... in the preparation and presentation of claims under laws administered by the Department."). Pursuant to the duty to assist, the Secretary is required to assist the claimant "in developing the facts pertinent to the claim"; that duty must be performed without regard to whether the evidence supports or detracts from the claim. Once the claim has been developed, the Secretary is required to make an impartial decision affording the claimant the benefit of the doubt where the evidence is in equipoise. The typical parley of "basic facts" and "counter proof" involved with presumptions in an adversarial proceeding does not fit the VA adjudication system where the very adjudicator, who is charged with assisting in the development of the claim, would also bear the burden of rebutting the presumption. *See Caluza v. Brown,* 7 Vet.App. 498, 508 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed. Cir.1996) (table).

▮ Additionally, the standard of proof for rebutting the presumption of soundness is not merely evidence that is cogent and compelling, i.e., a sufficient showing, but evidence that is clear and unmistakable, i.e., undebatable. It is therefore reasonable that the Secretary would require the consideration of all the evidence of record to determine if the evidence had met such a high standard of proof. The Court holds that the Secretary's regulatory requirement that all the evidence of record be considered in determining if the presumption of soundness has been rebutted is a reasonable construction of the law. Pursuant to section 3.304(b), the question is not whether the Secretary has sustained a burden of producing evidence, but whether the evidence as a whole, clearly and unmistakably demonstrates that the injury or disease existed prior to service. That determination is dispositive as to the question of preservice inception; further adjudication under a preponderance of the evidence would be redundant.

### 2. Standard of Review

▮ The Court has repeatedly held that it reviews de novo whether the facts found by the Board amount to clear and unmistakable evidence, while giving deferential treatment to the Board's underlying factual findings and determinations of credibility. *See Miller v. West,* 11 Vet.App. 345, 347 (1998); *Bagby v. Derwinski,* 1 Vet.App. 225, 227 (1991). A determination of whether the presumption of soundness has been rebutted is a mixed question of law and fact. That conclusion is especially important in light of the Court's holding today that all the evidence of record must be considered in determining whether the presumption has been overcome. The Board's decision regarding clear and unmistakable evidence will necessarily encompass the resolution of issues of weight and credibility. Therefore, the Court will review the Board's application of the clear-and-unmistakable-evidence standard to the facts found under the deferential "arbitrary, capricious, an abuse of discretion, or not in accordance with law" standard. 38 U.S.C. § 7261(a)(3)(A); *see also Butts v. Brown,* 5 Vet.App. 532, 539 (1993) (en banc).

### 3. Application

▮ After a review of the record, the Court holds that the Board's decision was arbitrary, capricious, an abuse of discretion, and not in accordance with law. First, the Board not only applied the more lenient clear-and-convincing-evidence standard, but also failed to consider all the evidence of record when determining whether the presumption of soundness had been rebutted. Second, the Board did not even discuss the credibility of the lay statements, including the appellant's own testimony, that he had not suffered from seizures prior to service. *See Parker, supra.* The Board is free to reject this evidence if it lacks competency or credibility. Furthermore, the Board may find that the evidence is of such low probative value that it does not affect the "unmistakability" of the evidence showing preservice inception of the seizure disorder. In short, the Board is not precluded from finding that the condition existed prior to service simply because there is some evidence to the contrary if their findings of fact indicate that the contrary evidence is of no weight or otherwise non-probative. However, the

Board must provide reasons and bases for such a finding. *See Caluza,* 7 Vet.App. at 506 (1995); *see also Gilbert v. Derwinski,* 1 Vet.App. 49, 58 (1990) (holding that failure to provide reasons and bases for not applying the benefit of the doubt would be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). Third, the Court can find no basis in the record on appeal for the Board's factual finding that the 1996 VA neurological examination established that the seizure disorder preexisted service. *See Miller, supra; Gilbert,* 1 Vet. App. at 52–53. The Board stated that the neurologist had opined "that [the appellant's] seizure disorder was of 'long-standing' etiology which dated back at least to 1974, many years prior to his military service." However, the doctor's opinion cannot bear the weight of the construction which the BVA seeks to place upon it. Based on the Court's reading, the doctor merely noted that the appellant had been treated at the VA facility since 1980 and that there existed records in the claims file which suggested his disorder had existed prior to service. Indeed, the doctor expressly stated, "I cannot shed any further light on this situation." Therefore, the doctor actually expressed no opinion on the etiology of the seizure disorder or the date of its onset. This error is especially egregious because the Board stated that the doctor's opinion was unrefuted and dispositive of the issue of preservice inception. Not only was the Board's factual determination incorrect, but, as a matter of law, the neurologist's refusal to opine regarding the etiology of the seizure disorder lacked any probative value on that question and could not be clear and unmistakable evidence.

### B. Compliance with Remand Order

The Court has held "that a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders." *Stegall v. West,* 11 Vet.App. 268, 271 (1998); *see also* 38 C.F.R. § 4.2 (if a medical report does not contain sufficient detail, the report should be returned as inadequate for evaluation purposes). In June 1996, the Board issued a remand order that specifically requested a medical opinion discussing (1) the probable etiology of the seizure disorder and its date of first manifestation, and (2) whether the disorder increased in severity during service. Not only did the VA examiner, in the 1996 neurological report, fail to provide his professional judgment regarding the inception of the seizure disorder, but he did not discuss whether the condition had increased in severity during service. He merely stated that the appellant's ability to control his disorder had not changed since he was first treated at the VA medical facility in the 1980's. With respect to the 1996 VA neurological examination, the examination was inadequate and the Board's failure to obtain a thorough examination violated the veteran's right to compliance. If the matter is of such complexity to be outside the scope of a VA examiner's expertise, "the Secretary may secure an advisory medical opinion from one or more independent medical experts who are not employees of [VA]." 38 U.S.C. § 5109(a). Therefore, on remand, the Board must obtain adequate medical opinions with respect to the ascertainable time of inception of the seizure disorder and, if necessary, with respect to whether the condition increased in severity during service. *See Stegall, supra.*

### C. Clear and Unmistakable Error

■ The appellant claims that the July 1981 VARO decision, which denied his claim for service connection for his seizure disorder, was clearly and unmistakably erroneous. *See* 38 U.S.C. § 5109A (stating that a final decision by the Secretary may be reversed or revised on the grounds of clear and unmistakable evidence). This Court does not have jurisdiction to review claims of clear and unmistakable error in the first instance. *See Russell,* 3 Vet.App. at 320. Thus, because the appellant did not raise this allegation of clear and unmistakable error before the Board, the Court declines to review its merits now. On remand, the appellant will be free to raise the issue to the Board. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992).

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the Board's August 1997 decision was arbitrary,

capricious, an abuse of discretion, and not in accordance with law. Therefore, the decision is VACATED and the matter REMANDED for readjudication.

NEBEKER, Chief Judge, concurring in part and dissenting in part:

I concur in the opinion of the Court, except as to the remedy and related observations respecting the options of the BVA on remand. I would reverse outright and thus dissent from the remedy of remand.

In addition to the extensive testimony the appellant has presented at hearings before both the VARO and the Board, the evidence against a finding of a preservice condition includes: the appellant's entrance medical examination which is silent as to the existence of any abnormalities, including any history of epilepsy, fits, or loss of consciousness; childhood medical records and school health records which are silent as to any seizure disorder; and several corroborative statements from the appellant's family and friends, all of whom confirm long-term relationships with the veteran and no knowledge of any seizure disorder until after his induction into service. The veracity of this evidence is not so suspect as to strip it of any corroborative effect on the presumption of soundness.

I certainly agree that "the neurologist's refusal to opine regarding the etiology of the seizure disorder lacked any probative value on [the question of preservice inception] and could not be clear and unmistakable evidence." *Ante* at 262. The other evidence tending toward a preservice condition can hardly carry the day for an "unmistakable" rebuttal of the presumption of soundness. That evidence is shrouded in the darkness of having been produced from Mr. Vanerson while he was confused or drugged and recovering from a seizure.

In my view, as a matter of law, the evidence tending to show a preservice condition, when considered with all of the evidence, as the majority opinion accurately states, cannot present an unmistakable rebuttal of the presumption of soundness. If rebuttal of the presumption could be accomplished by a preponderance of the evidence, with reasonable inferences drawn therefrom, we would have a different case for review. But such is not possible under an "unmistakable" standard. Inferences are permitted, and while there is room for mistake even under the "reasonable certainty" requirements of a "clear and convincing" standard of proof case, only an inference that is iron clad and copper riveted can be "unmistakable." The evidence in this case which demonstrates that the seizure disorder existed prior to service is not "undebatable," and I would reverse the Board's holding and direct the calculation of benefits and an effective date as required by law.