http://www.va.gov/vetapp16/Files4/1634332.txt

Citation Nr: 1634332 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 11-17 787 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota

THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder, including posttraumatic stress disorder (PTSD).

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

A. Solomon, Associate Counsel

INTRODUCTION

The Veteran served in the United States Army National Guard with periods of active duty from March 2003 to April 2004 and from March 2009 to February 2010.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Saint Paul, Minnesota. The Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge in May 2016. A transcript is of record. 

The Board subsequently remanded the case for further development in January 2016. It has since been returned to the Board for appellate review.

FINDINGS OF FACT

1. No mental health abnormalities or defects were noted on the March 2009 Pre-Deployment Health Assessment or the Mobilization Medical Evaluation Checklist. 

2. The evidence of record clearly and unmistakably demonstrates that the Veteran suffered from psychiatric disorders prior to activation in support of Operation Iraqi Freedom in March 2009, but does not clearly and unmistakably demonstrate that the Veteran's acquired psychiatric disorders were not aggravated during the period of active duty. 

3. The Veteran filed his claim for service connection for an acquired psychiatric disorder shortly after returning from his second Iraq deployment and prior to separation from active duty; he has continued to suffer from symptoms of anxiety, irritability, anger, and increased hyperactivity since discharge from active military service. 

CONCLUSION OF LAW

The criteria for service connection for acquired psychiatric disorder, diagnosed as anxiety disorder, not otherwise specified (NOS) and dysthymic disorder, have been met. 38 U.S.C.A. §§ 1110, 1111, 1112 (West 2014); 38 C.F.R. §§ 3.303 , 3.304(b) (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016); see also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). In this case, the Board is granting in full the benefits sought on appeal. Accordingly, without deciding whether any error was committed with respect to the duty to notify or the duty to assist, such error was harmless and need not be further considered.

The Veteran is seeking service connection for an acquired psychiatric disorder related to his active military service. 

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

To establish service connection for a disability resulting from a disease or injury incurred in service, or to establish service connection based on aggravation in service of a disease or injury which pre-existed service, there must be (1) competent evidence of the current existence of the disability for which service connection is being claimed; (2) competent evidence of incurrence or aggravation of a disease or injury in active service; and (3) competent evidence of a nexus or connection between the current disability and the disease or injury incurred or aggravated in service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). In many cases, medical evidence is required to meet the requirement that the evidence be "competent". However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination "medical in nature" and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007). In relevant part, 38 U.S.C. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability benefits. 

Every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b) (2016).

When no preexisting condition is noted upon entry into active military service, the Veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness; VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service and that the disease or injury was not aggravated by service. 38 C.F.R. § 3.304(b); VAOPGCPREC 3-03, 69 Fed. Reg. 25,178 (2004); Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any increase in disability is due to the natural progress of the preexisting condition. 38 U.S.C.A. § 1153. Clear and unmistakable evidence is a more formidable evidentiary burden than the preponderance of the evidence standard. See Vanerson v. West, 12 Vet. App. 254, 258 (1999). It is an onerous evidentiary standard, requiring that the no-aggravation result be undebatable. See Cotant v. Principi, 17 Vet. App. 116 (2003).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C.A. § 5107(b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102. The question is whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which event the claim must be denied. See Gilbert, 1 Vet. App. at 54.

In determining whether statements submitted by a Veteran are credible, the Board may consider internal consistency, facial plausibility, self-interest, consistency with other evidence of record, malingering, desire for monetary gain, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995), aff'd, 78 F.3d 604 (Fed. Cir. 1996) (per curiam) (table); see also Madden v. Brown, 125 F.3d 1447 (Fed Cir. 1997) (holding that the Board has the "authority to discount the weight and probative value of evidence in light of its inherent characteristics in its relationship to other items of evidence"). Further, the United States Court of Appeals for the Federal Circuit (Federal Circuit Court) has held that, while the absence of contemporaneous medical records does not, in and of itself, render lay testimony not credible, the Board may weigh the absence of contemporaneous records when assessing the credibility of lay evidence. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) ("Nor do we hold that the Board cannot weigh the absence of contemporaneous medical evidence against the lay evidence of record."). Moreover, although the Board cannot reject a claimant's statements merely because he is an interested party, the claimant's interest may affect the credibility of his testimony when considered in light of the other factors. See Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991); accord Buchanan, 451 F.3d at 1337 (holding that "the Board, as fact finder, is obligated to, and fully justified in, determining whether lay evidence is credible in and of itself, i.e., because of possible bias . . . .").

The Veteran asserts that he has developed an acquired psychiatric disorder as a result of his military service. Specifically, the Veteran states that such arose due to an in-service experience in Iraq in November 2003 where he was in close proximity to a car bomb explosion and witnessed the aftermath carnage of disfigured and bloody bodies. At the May 2016 Board hearing, the Veteran testified that this event increased his anxiety and frustration, causing him to drink heavily and turn to drugs to forget and deal with the constant fear for his life he experienced during the rest of his deployment. The Veteran further reported that after returning to regular National Guard duty, a close friend died suddenly while the Veteran was on a period of active duty for training (ACDUTRA) and therefore was unable to attend his friend's funeral. The Veteran stated that this enhanced his feelings and anger and his psychiatric symptoms, and that he sought treatment for his PTSD and substance use a few times before his second deployment. Finally, he further testified that his second active duty deployment to Iraq, from March 2009 to February 2010, was highly unorganized and poorly led, resulted in increased frustration and irritability, and was an overall terrible experience that left him full of anger.

The Veteran's service treatment records during his period of active duty from March 2003 to April 2004 do not reference any psychiatric complaints or treatment. Additionally, a January 2005 National Guard retention examination found no psychiatric abnormalities on clinical evaluation, and the Veteran denied having nervous trouble of any sort on his report of medical history. In an October 2007 VA mental health treatment record, the Veteran described his prior deployment to southern Iraq, and noted that he came under fire in one convoy and witnessed a roadside bomb that killed many civilians, but denied feeling much of a threat from these instances. The treatment record does note that the Veteran became depressed and began drinking to excess when a close friend who had served with him in Iraq died shortly after returning from that deployment. Another October 2007 VA treatment record includes an opinion that the Veteran did not suffer from PTSD, as he did not endorse the typical symptoms and denied being in frequent combat or fearful situations during his deployments. Additional VA mental health treatment records from October and November 2007 state that the Veteran had hypervigilance and emotional numbness after returning from Iraq, and avoided watching movies related to the Iraq war; a diagnoses of mood disorder NOS and rule out PTSD were noted. A November 2007 record documented the Veteran's reports of feeling anxious whenever thinking about the possibility of going back to Iraq.

The Veteran was provided with a VA examination in July 2010, at which his responses to an evaluative MMPI-2 test were found to yield an invalid profile. The Veteran reported daily cannabis use and drinking to excess prior to his second deployment, with DUIs in 2002, 2006, and 2007, and outpatient mental health treatment beginning in fall 2007 where he was diagnosed with mood disorder NOS and alcohol abuse. The Veteran reported symptoms of depression throughout life, and racing thoughts. The Veteran described hating everyone during his second deployment, and since returning, experiencing low energy levels and self-esteem, and anger issues resulting in his yelling at people for no reason. The examiner stated that he was unable to provide a diagnosis other than alcohol and cannabis abuse or an etiological opinion, in light of the fact that daily substance use likely contribute substantially to the Veteran's mood symptoms. The Veteran submitted a private PTSD evaluation report, wherein the examiner noted seeing the Veteran for 150 minutes, documented the Veteran's numerous reported stressor incidents, and provided an opinion that the Veteran had PTSD related to his described in-service stressors. An additional VA examination conducted in January 2012 found that the Veteran did not meet the DSM-IV criteria for PTSD, with the examiner commenting that the Veteran appeared overly dramatic during the interview, particularly when describing his first stressor, which he did for 20 minutes. The examiner opined that the Veteran likely had a legitimate mental health condition causing problems with his overall functioning, but found the Veteran's self-report to lack credibility, and thus concluded that he was unable to provide a clear determination on the question of etiology without resorting to mere speculation.

While the Board could remand this matter in order to obtain an additional VA examination and medical opinion to review the contradictory medical evidence of record and provide additional clarity as to the effects of the Veteran's first deployment on his psychological functioning, the Board instead finds that evidence regarding the Veteran's second deployment to Iraq provides a sufficient basis upon which to grant the appeal.

As noted above, the Veteran was ordered to a second period of active duty from March 2009 to February 2010, during which time he was redeployed to Iraq in support of Operation Iraqi Freedom. The claims file contains a Pre-Deployment Health Assessment and a Mobilization Medical Evaluation Checklist from March 2009 which do not note the presence of any psychiatric abnormalities or defects. The Veteran is thus presumed to have been psychiatrically sound at the time he entered this period of active duty. See 38 U.S.C.A. § 1111.

As previously discussed, service treatment and VA treatment records from the Veteran's period of regular National Guard service between his two Iraqi deployments clearly document depressive symptoms and alcohol abuse, as well as a diagnosis of mood disorder NOS, but both lay and medical evidence of record document an increase in anxiety, anger, and irritability during the second deployment, with a diagnosis of anxiety disorder NOS documented on a number of mental health treatment records following the Veteran's return from Iraq. Although the Veteran's service treatment records from the period of active duty beginning in March 2009 generally do not contain records of mental health treatment, June and July 2009 VA treatment notes indicate that the Veteran's father reached out to the Veterans Health Administration (VHA) requesting a prescription for his son, and indicating that the Veteran did not want it revealed to his unit that he needed medications for sleep or other mental health problems. A July 2009 VA treatment addendum note states that there are many legitimate reasons why a soldier in a leadership position would not seek mental health services while in a combat zone, and indicates that the VHA employee would attempt to coordinate a call between the Veteran and his provider in the states. January 2010 service personnel records from the end of this period of active duty also indicate an increase in symptomatology: a sworn statement from a sergeant at Fort McCoy notes that the Veteran failed an alcohol breath test; a post-deployment health assessment records the Veteran's report of having little interest or pleasure in doing things more than half of the days and feeling down depressed or hopeless for a few or several days during the past month, with the Veteran additionally expressing an interest in receiving information and/or assistance for stress, emotional, or alcohol concerns; and an individual sick slip for behavioral health noted that the Veteran gave a positive response to losing control and wanting to harm someone. A March 2010 chronological record of medical care states that the Veteran reported that his second deployment was "awful," that he had had problems with his unit command, and upon returning was angry and depressed and began drinking and using other substances daily to blackout/pass out as a way of handling his anxiety and insomnia. A July 2010 mental health psychological assessment noted the Veteran's reports of increased hyperactivity since his latest deployment to Iraq, for which he self-medicated with alcohol and marijuana, reportedly using 6-7 bowls per day of marijuana since January 2010. The Veteran's National Guard treatment records further document severe anxiety in response to impending drills, with a March 2011 service treatment record noting that the Veteran had deployed twice and "experienced situations that resulted in several post episodes of anxiety and depression."

In considering the evidence of record, the Board finds that the evidence clearly and unmistakably demonstrates that the Veteran suffered from psychiatric disorders prior to activation in support of Operation Iraqi Freedom in March 2009, but does not clearly and unmistakably demonstrate that the Veteran's acquired psychiatric disorders were not aggravated during this period of active duty. Rather, the evidence strongly suggests that the Veteran's symptoms of anxiety, irritability, and anger significantly increased during his second deployment, resulting in a diagnosis of anxiety disorder NOS which was not present prior to this deployment, and have continued for many years following deactivation from active duty rather than resolving back to pre-deployment levels. Although there exists conflicting evidence of record as to whether the Veteran's psychiatric symptoms are a result of substance use or vice versa, the Board finds this evidence to be evenly balanced and the evidence of continuous heightened anxiety symptoms since the most-recent period of active duty sufficient to bring the weight of the evidence at least into equipoise as to the question of whether the Veteran's acquired psychiatric disorder was permanently aggravated beyond the natural progression of the disorder during a period of active military service. The Board will thus afford the Veteran the benefit of the doubt, as is required by the applicable regulation, in finding that service connection for an acquired psychiatric disorder, characterized as anxiety disorder, NOS, is warranted. See 38 U.S.C.A. §§1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.304. 

ORDER

Service connection for acquired psychiatric disorder, characterized as anxiety disorder NOS, is granted.

____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs