Citation Nr: 1801835 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 14-11 597 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to service connection for a right foot disability.

2. Entitlement to service connection for a left foot disability, to include as secondary to a right foot disability.

3. Entitlement to service connection for a left knee disability, to include as secondary to a right foot disability.


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs


ATTORNEY FOR THE BOARD

G.C., Associate Counsel


INTRODUCTION

The Veteran served on active duty for 20 days in January 1974. This case comes before the Board of Veterans' Appeals (Board) on appeal of a July 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) located in Oakland, California.

When this case was before the Board in October 2014, it was remanded for further development. It was again remanded in March 2016 for development including a VA opinion on the nature and etiology of the Veteran's foot disorders. While a VA opinion is now of record, further clarification is necessary.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Although further delay is regrettable, the Board is of the opinion that additional development is required before the Veteran's claims are decided.

The Veteran has claimed entitlement to service connection for a right foot disability, a left foot disability as secondary to a right foot disability, and a left knee disability as secondary to a right foot disability. The medical evidence of record includes diagnoses of bilateral foot disorders including cavus and valgus deformities, calcaneal spurs, plantar fasciitis, degenerative changes, and hammertoe, as well as osteoarthritis of the left knee and subsequent left knee replacement. While current disabilities have been established for service connection purposes, the nature and etiology of said disabilities remain unclear. 

The Board notes that every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service. 38 U.S.C. § 1111 (2012). To rebut the presumption of soundness for disorders not noted on the entrance or enlistment examination, VA must show by clear and unmistakable evidence both that a) the disease or injury existed prior to service, and b) the disease or injury was not aggravated by service. VAOPGCPREC 3-2003 (July 16, 2003). The United States Court of Appeals for Veterans Claims has explained that clear and unmistakable evidence means the evidence "cannot be misinterpreted and misunderstood, i.e., it is undebatable." Vanerson v. West, 12 Vet. App. 254, 258-59 (1999).

In this regard, the Board notes that the Veteran's February 1973 service entrance examination reflects that his feet were evaluated as normal. However, both the Veteran has stated and the medical record shows that, prior to service, the Veteran underwent a right foot surgery in December 1971 after a right foot fracture from a June 1969 bicycle accident. The Veteran's service treatment records also show that on his eighth day of basic training, he reported longstanding foot pain, and a Medical Board Report shows that he was deemed unable to perform strenuous duties due to a severe, symptomatic right foot carovarus originating from 1969. He was discharged in January 1974 after 20 days of active service.

In a February 1973 consultation note, a private orthopedist described the Veteran's history of a bicycle accident and subsequent surgery, and noted that he had been fully active since the surgery and had not consulted a physician for further care. The orthopedist stated that X-rays showed moderate cavus type deformity of both feet. He stated that at the time of the consultation, the only significant evidence of orthopedic pathology he could find was moderate asymptomatic pes cavus deformity of both feet. He stated that the Veteran's condition had apparently been non-incapacitating and had never required treatment. Also included in the Veteran's STRs is a February 1973 letter by Dr. D.W., the physician who performed the Veteran's December 1971 right foot surgery. Dr. D.W. stated that the Veteran had done well following surgery and that he saw no reason the Veteran should not be fit for military service.

In June 2011, the Veteran was afforded a VA examination. The examiner reviewed the Veteran's claims file and medical history, including his bike accident and subsequent surgery. While the examiner noted that the Veteran was born with high arches and hallux valgus deformity, he also stated that the Veteran's left foot started hurting shortly after the right foot in 1974, and that there was an onset of left knee pain about three years prior to the examination. The examiner did indicate that the Veteran had a condition which pre-existed military service, but found that the brief time in service was insufficient to cause any long-term damage or aggravation. The examiner stated his opinion that the Veteran "is less likely than not to have been aggravated by the eight days he spent in the military," and stated that since his service, both feet had progressed to their current condition, which was a "normal progression of time." The examiner stated that the Veteran never should have been taken into service, based on his high arches alone, since people with high arches are prone to developing significant foot and knee problems. The examiner also stated that the Veteran's left knee condition was probably secondary to his high arches and foot problem.

In contrast, in an August 2011 letter, Dr. B.H. states his opinion that the Veteran's injury was "notably related to" his military service and that it was "potentiated" by such service. 

In addition, a November 2015 letter from Dr. J.T. states the doctor's opinion that the physician examining the Veteran at entrance into the military should have recognized the biomechanical problems of his foot, and further, that the type of activity in the military would significantly produce a pain cycle and speed up arthritic conditions to where the Veteran's right foot would not be able to recover. Pertinently, as also confirmed by a December 2015 follow up note, Dr. J.T. stated that as the Veteran did stay in the military long enough to induce chronic pain and compensation problems by changing his gait, it is more than likely that the increased level of activity the Veteran was exposed to during his military service caused his current foot pain. 

As the June 2011 VA examiner did not address the questions presented in terms of clear and unmistakable evidence, the Board remanded for an additional VA examination and opinion, which was obtained in May 2016. The examiner opined that the Veteran's claimed right foot disability was less likely than not incurred in or caused by service. His only rationale, however, was that no event in service led to the Veteran's cavus deformity which pre-dated his entry into service.

The Board finds this VA opinion to be inadequate as it fails to address the question of whether the Veteran's right foot disability clearly and unmistakably both pre-existed service and was not aggravated by military service beyond its natural progression. It further fails to discuss the private medical opinions of record.

Finally, as the Veteran has claimed a left foot disability and left knee disability, both as secondary to a right foot disability, adjudication of these issues is not possible until more clarification is obtained.

Accordingly, the case is REMANDED for the following action:

1. Return the claims file to the examiner who conducted the May 2016 VA examination of the Veteran for an addendum. If the May 2016 VA examiner is not available, the claims file must be provided to another appropriate medical professional who will provide the requested opinion. After a review of the entire claims file, the examiner must respond to the following requests and provide a full explanation and rationale of the basis for each conclusion reached.

Based upon review of the pre-service, service and post-service medical records, the examiner must identify all right foot disabilities the Veteran currently experiences.

The examiner must then address the following questions:

* Does the evidence of record clearly and unmistakably show that the Veteran had a right foot disability that existed prior to his entry onto active duty? Attention is invited to the Veteran's entrance examination, history and lay statements of record.

* If the answer is "yes," does the evidence clearly and unmistakably show that the preexisting right foot disability was not aggravated by service? Attention is invited to the August 2011 letter from Dr. B.H. and the November and December 2015 notes from Dr. J.T.

* If the answer is "no," is it at least as likely as not (a 50 percent or greater possibility) that any current right foot disability is etiologically related to, or had its onset during, the Veteran's period of active military service or within the initial post-service year?

Aggravation is defined as a worsening of the underlying condition versus a temporary flare-up of symptoms. 

The evidentiary standard of clear and unmistakable evidence means that the evidence is "undebatable." Horn v. Shinseki, 25 Vet. App. 231, 234-35 (2012).

If the examiner finds that the Veteran's right foot disability was aggravated by his military service, then the examiner is asked to answer the following questions:

* Is it at least as likely as not (a 50 percent or greater possibility) that the Veteran's left foot disability was caused by his right foot disability?

* Is it at least as likely as not (a 50 percent or greater possibility) that the Veteran's left foot disability was aggravated by his right foot disability?

* Is it at least as likely as not (a 50 percent or greater possibility) that the Veteran's left knee disability was caused by his right foot disability?

* Is it at least as likely as not (a 50 percent or greater possibility) that the Veteran's left knee disability was aggravated by his right foot disability?

All opinions must be accompanied by a complete rationale. If the VA examiner is unable to reach an opinion without resort to speculation, he or she should explain the reasons for this inability and comment on whether any further tests, evidence or information would be useful in rendering an opinion.

2. Upon completion of the above, readjudicate the issues on appeal. If any benefit sought on appeal remains denied, the Veteran and his representative should be furnished an appropriate Supplemental Statement of the Case and be provided an opportunity to respond. Thereafter, the case should be returned to the Board for further appellate consideration, as appropriate.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



_________________________________________________
CAROLINE B. FLEMING
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (2012), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).