# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 00-2382

MICHAEL D. COTANT, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    June 6, 2003   )

*Ronald L. Smith*, of Washington, D.C., was on the pleadings for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; *Michael A. Leonard*, Deputy Assistant General Counsel; and *Kate Gorney*, all of Washington, D.C., were on pleadings for the appellee.

Before FARLEY, IVERS, and STEINBERG, *Judges*.

STEINBERG, *Judge*:    The appellant, Michael D. Cotant, through counsel, seeks review of an August 21, 2000, decision of the Board of Veterans' Appeals (Board or BVA) that denied his claim for Department of Veterans Affairs (VA) service connection for degenerative joint disease (DJD) of the right hip.  Record (R.) at 1-9.  The appellant filed a brief and a reply brief, and the Secretary filed a brief.  In response to a February 2002 Court order, the appellant filed a supplemental brief and a supplemental reply brief, and the Secretary filed a supplemental brief.  In January 2003, the parties filed a joint response to a December 2002 Court order.  For the reasons set forth below, the Court will reverse the Board decision and remand the matter for further proceedings.

## I. Relevant Background

The veteran served on active duty in the U.S. Navy from May 1980 to September 1992, when he was honorably discharged. R. at 11-17. For his service, his awards included the National Defense Service Medal and the Navy Expeditionary Medal. R. at 11, 13, 15. His May 1980 Navy entrance medical examination report noted that the veteran previously had been medically discharged from the U.S. Army National Guard because of a "bruised hip". R. at 23. Otherwise, except for a request to examine the veteran for high blood pressure, this May 1980 report indicated that "[a]ll significant defects, if any, have been evaluated and have been determined to be non-disqualifying." R. at 27.

On September 21, 1992, the veteran filed an application for VA service connection for, inter alia, "degenerative/cystic changes of the [right] femoral head." R. at 363-66. A January 1993 VA regional office (RO) decision deferred consideration of his claim until it had gathered the veteran's preservice medical records from his private physician, Dr. Donald M. Gentry. R. at 393-95. In April 1993, the VARO received the veteran's private medical records, dated between 1959 and 1974. R. at 397-411. A February 1962 entry noted that the veteran had "pain and limp in right hip" and noted a "history of injury on bicycle last fall." R. at 399. The records also indicated that the veteran was fitted for a leg brace in 1963. *Ibid*. A January 1993 VA compensation and pension (C&P) examination report stated: "Right hip. Patient does have a very significant limp and does note that he has constant pain there. I will defer the x-rays to the radiologist, but would imagine that he will begin having problems in his other joints including his knees and other hip secondary to the limp." R. at 557. There is no subsequent radiological report in the record on appeal (ROA). *See* R. at 1-624.

In a May 1993 decision, the RO denied the veteran's claim for VA service connection for "a right[-]hip condition" because the evidence showed that "this condition preexisted military duty and was not permanently aggravated during active duty." R. at 519. The veteran appealed that determination to the Board in October 1993 (R. at 534); however, the procedural history following the veteran's appeal is unclear from the ROA (*see* R. at 1-624). In September 1996, the veteran's representative forwarded to an RO a letter from Dr. Gentry that stated: "I have reviewed Mike Cotant's medical record which dates back to when he was a child. It reveals he had Legg[-]Perthes disease of the right hip before he joined the military service, the result of which left him with

significant degenerative joint changes of the hip[,] which in my opinion was aggravated by the activities he did in the service." R. at 578. In December 1997, the Board remanded the veteran's claim to the RO in order to obtain pertinent medical records and conduct an additional VA examination. R. at 588-93.

In April 1998, the RO received from Dr. Gentry's office additional private medical records, dated between 1980 and 1998. R. at 595-602, 613. Dr. Mark R. Rangitsch conducted a VA C&P examination in June 1998; he diagnosed the veteran as having "Perthes disease of the right hip with degenerative arthritis of the right hip" and concluded:

> The nature of the leg calf Perthes disease this patient has is consistent with the problems he is currently having. The patient['s] developing Perthes at 8 years of age and [being] treated with bracing and casting has likely developed degenerative arthritis in his hip as time goes along. As to whether the pre-existing disease would have manifested arthritic changes, this is impossible to entirely say, but it is very common for a patient who is diagnosed with Perthes at a late age of 8 years to develop significant degenerative arthritis. As to whether this is accelerated by his military service, it is impossible to say. Certainly, the activities he performed could have accelerated the hip disease. However, it is most likely that the natural process of his disease would have resulted in him developing this hip problem even at this early age. This is not uncommon, and I would feel it is more likely that the hip disease was due to underlying Perthes disease and the natural processes of aging as the disease would progress versus being aggravated or significantly increased by his service activities.

R. at 605. The examination report noted that the examiner did not initially have access to the veteran's medical records (R. at 604), but in January 2000, after reviewing two volumes of the veteran's medical records, Dr. Rangitsch submitted a supplementary letter in which he concluded:

> [I] feel the degenerative arthritis of the right hip, which is due to pre-existing Perthes disease, would likely have occurred even in the absence of active military service. I feel it is most likely that the underlying disease had went [sic] through a natural aging process, which is commonly seen in patients who develop Perthes disease, specifically at a later age such as 8, as the patient states was the case. Therefore, I would have to continue my opinion that this was a natural process of aging and was not significantly aggravated by his service-related activities.

3

(R. at 609).

In the August 2000 BVA decision here on appeal denying the veteran's claim for service connection for DJD of the right hip, the Board determined that the veteran's claim for VA service connection for DJD of the right hip was well grounded within the meaning of section 5107(a) as in effect at that time. R. at 3. The Board found, pursuant to 38 C.F.R. § 3.304(b) (1999), that clear and unmistakable evidence demonstrated that the veteran's "right hip arthritis" preexisted service, even though that disability was not noted during his May 1980 entrance examination. R. at 3, 6. In making that finding, the Board relied on a March 1980 medical record (not included in the ROA) from the veteran's private physician that referred to "x-ray evidence of arthritis changes at the head of the right femur." R. at 6.

The Board further found, by virtue of the application of the benefit-of-the-doubt rule under 38 U.S.C. § 5107(b), that the "positive evidence was in a state of equipoise with the negative evidence on the question of whether or not there was an increase in severity of the preexisting disorder during service" and thus concluded that the veteran's hip condition had increased in severity during service. R. at 7. The Board then determined that, pursuant to 38 C.F.R. § 3.306 (1999), the aggravation of his disability was due to the natural progression of the disease:

> A presumption of aggravation arises when there is a finding that a preexisting disability increased in severity during service. 38 C.F.R. § 3.306. Although the veteran's private physician, Dr. Gentry, indicated in a statement that the veteran's condition was aggravated by the activities in service, there is no indication that the veteran's claims file was reviewed[,] to include service medical records [(SMRs)]. In addition, Dr. Gentry gave no rationale or explanation for his opinion. In contrast, the VA examiner's opinion concluded that the hip disease was due to the underlying Legg-Perthes disease and the natural progresses of aging as the disease would progress versus being aggravated or significantly increased by his service activities. The Board gives more weight to the June 1998 VA examiner's opinion, because, unlike the private physician's opinion, it was preceded by a thorough clinical examination, which is of record, and a review of the claims file[,] to include [SMR]s. Moreover, the VA examiner's review of the entire medical record and the detailed rationale for the conclusion that the right[-]hip disorder underwent a natural progression of the underlying disease, the Board finds that the opinions offered by the VA examiner rise to the higher

4

level of clear and unmistakable evidence sufficient to rebut the presumption of aggravation.

R. at 7.

## II. Contentions of the Parties and Procedural History

In his June 2001 brief, the appellant argues that the August 2000 BVA decision should be reversed and the matter remanded to the Board "with an instruction that Mr. Cotant be awarded service connection." Brief (Br.) at 11-37. The appellant contends that (1) "the Board committed legal error by finding that the equivocal statements of Dr. Rangitsch were legally sufficient to satisfy the clear and unmistakable evidence standard of [38 U.S.C. §] 1111" and (2) "the Board further erred by applying [section] 1153 in a case where the veteran had the benefit of the [section] 1111 presumption of aggravation and the VA had the burden to prove [by clear and unmistakable evidence] that any disease or injury found to have preexisted service had not been aggravated in service." Br. at 11-21. In response to a March 2001 order of this Court directing the parties to address whether an appellant should be permitted to waive consideration on appeal of any rights he had under the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (VCAA), the appellant maintains that such a waiver is permissible and that the Court should accept his waiver of the consideration of the VCAA in his appeal. Br. at 21-37.

In his brief, the Secretary argues that the Court should affirm the Board decision; he contends that the Board correctly applied the section 1153 presumption of aggravation to the appellant's claim after it determined that the appellant had a preexisting hip condition. Br. at 18. The Secretary argues that the statutory scheme should be interpreted as follows:

> Where a veteran enrolls for service, he is taken to be in sound condition [except] for disorders noted or found upon examination, or where clear and unmistakable evidence demonstrates that the injury or disease existed before enrollment and was not aggravated by such service. (38 U.S.C. § 1111). But where there is a preexisting condition, it will be considered to be aggravated by service when there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease. (38 U.S.C. § 1153).

5

Br. at 17-18. On the issue of waiver of VCAA consideration on appeal, the Secretary "agrees that waiver is appropriate in this case." Br. at 8.

In his reply brief, the appellant contests the Secretary's interpretation of the interplay between sections 1111 and 1153. He argues as follows:

> Although both statutes refer to "aggravation" of a preexisting condition, [section] 1111, by its express terms is applicable only in one circumstance, i.e., when a veteran has claimed service connection for a mental or physical disability which was not "noted" at the time of examination, acceptance, and enrollment for service. If the veteran's entrance examination "notes" the disability for which he or she is claiming service connection, [section] 1111 has no application and VA adjudicators must then turn to [section] 1153 to determine whether the disability noted at induction was "aggravated."

Reply Br. at 3.

In February 2002, the Court issued a supplemental briefing order directing the parties to address the impact on this case of the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Davis (John F.) v. Principi*, 276 F.3d 1341 (Fed. Cir. 2002). *Cotant v. Principi*, 15 Vet.App. 431, 431-32 (2002) (per curiam order). In that opinion, the Federal Circuit applied, without analysis, section 1153 in a case where the preexisting condition was not noted at entry but, as provided for in section 1111, had been found to be preexisting by the Board based on clear and unmistakable evidence, thereby rebutting the presumption of sound condition established by section 1111. *Davis (John F.)*, 276 F.3d at 1343-44.

The appellant filed a supplemental brief in March 2002; he argues that *Davis (John F.)* is irrelevant to this appeal because the decision did not "address the mutual exclusivity of [section] 1111 and [section] 1153 or construe, in application or otherwise, their relationship to one another." Supplemental (Suppl.) Br. at 2. The Secretary filed a supplemental brief in April 2002; he argues that the Federal Circuit's opinion in *Davis (John F.)* is instructive in clarifying (1) that section 1111 contains only the presumption of soundness, and not an additional presumption of aggravation as urged by the appellant and (2) that section 1153 establishes and defines the presumption of aggravation. Suppl. Br. at 6-9. Moreover, the Secretary contends that *Davis (John F.)* and several opinions of this Court exemplify that sections 1111 and 1153 have both been applied to a single

6

claim and are not "mutually exclusive." Suppl. Br. at 11. The appellant filed a reply brief disagreeing with the Secretary's position and arguing that *Davis (John F.)* held only that "'evidence of temporary flare-ups symptomatic of an underlying preexisting condition, alone, is not sufficient for a non-combat veteran to show increased disability under [section 1153] unless the underlying condition is worsened.'" Suppl. Reply Br. at 1-2 (quoting *Davis (John F.)*, 276 F.3d at 1346-47).

On July 30, 2002, the Court issued, sua sponte, an order staying this matter pending the outcome of *Jordan (Timothy) v. Principi*, U.S. Vet. App. No. 00-206 (Notice of Appeal (NOA) filed Jan. 9, 2000) [hereinafter *Jordan*] or further order of the Court, because the issues involved in the two cases – regarding proper interpretation of 38 U.S.C. §§ 311 and 353 (1979) (now sections 1111 and 1153, respectively) and the validity of 38 C.F.R. § 3.304(b) (1982) (now 38 C.F.R. § 3.304(b) (2002)) – are substantially similar. Moreover, the same counsel represents the appellants in the two cases. In a September 26, 2002, opinion, the Court in *Jordan* affirmed a November 1999 Board decision that had determined that there was no clear and unmistakable error (CUE) in an April 1983 Board decision that had denied the appellant's claim for VA service connection for a right-knee disorder based on a theory of aggravation of a preexisting injury or disease. *Jordan v. Principi*, No. 00-206, 2002 WL 31163854 (Vet. App. Sept. 26, 2002), *withdrawn,* 2002 WL 31445159 (Vet. App. Nov. 1, 2002). The Court rejected the appellant's statutory-interpretation argument that, notwithstanding 38 C.F.R. § 3.304(b) (1982), the provisions of 38 U.S.C. § 353 (1979) were inapplicable to an aggravation claim (1) where the Board had found (in a BVA decision under collateral attack) that a veteran's condition that had not been noted at entry was preexisting on the ground that the presumption of sound condition, pursuant to 38 U.S.C. § 311 (1979), had been rebutted by clear and unmistakable evidence showing that the condition had preexisted service, and (2) where the Board had denied service connection because it found that the evidence did not support a finding that the disability had increased in severity during service. *Jordan,* 2002 WL 31163854, at *12-14.

On October 17, 2002, the parties in *Jordan* filed a joint motion for panel reconsideration based on newly discovered legislative and regulatory history and recommended that the Court invalidate 38 C.F.R. § 3.304(b) to the extent that it provides that "the presumption of sound condition may be rebutted solely by clear and unmistakable evidence that a disease or injury existed

prior to service" – that is, without also requiring clear and unmistakable evidence that the disease or injury was ***not*** aggravated in service. *Jordan* Joint Motion (Mot.) at 11. On November 1, 2002, the Court granted that joint motion and withdrew its September 26, 2002, opinion. *Jordan*, 2002 WL 31445159, at *2 (quoting *Jordan* Joint Mot. at 11). The Court directed the parties to provide full copies of all pertinent materials regarding congressional intent in connection with 38 U.S.C. §§ 311 and 353 (1979) and the meaning of the language "and was not aggravated by such service" in section 311. *Jordan*, 2002 WL 31445159, at *3. The parties responded on November 18, 2002.

On December 30, 2002, the Court issued a supplemental briefing order in the instant case directing the parties (1) to show cause why the Court should not take judicial notice of the October 17 and November 18, 2002, pleadings filed in *Jordan* and proceed to decide the section 311/§ 3.304(b) issue in the instant case; and (2) to include in their responses their views on the remedy in this case if the Court were to invalidate § 3.304(b) to the extent recommended by the parties in *Jordan*.

The parties filed a joint response on January 10, 2003. In that response, the parties request that the Court take judicial notice of the October 17 and November 18, 2002, pleadings filed in *Jordan*. Joint Response (Resp.) at 3. The joint response states:

> The pleadings discuss the legislative history behind that statute and state that the law provides for a two-step process to rebut the presumption of sound condition, in that, not only must . . . [VA] find by clear and unmistakable evidence that the condition existed prior to service, but also, by clear and unmistakable evidence, find that the condition was not aggravated therein.

*Id.* at 4. The joint response further urges:

> In accordance with the pleadings filed in *Jordan*, the parties ask[] that the Court invalidate 38 C.F.R. § 3.304(b), to the extent that it is not consistent with [section] 1111. The parties submit that invalidation of 38 C.F.R. § 3.304(b) to the extent requested would bear significantly on the instant case, as the Board decision on appeal made specific findings relying on 38 C.F.R. § 3.304(b), and made findings regarding clear and unmistakable evidence on the issue of aggravation.

8

*Ibid*. The parties request that the Court remand the case for "proper application of the correct law." *Ibid.*

### III.  Analysis

#### *A.  VCAA Waiver*

The VCAA, inter alia, amended 38 U.S.C. § 5103 ("Notice to claimants of required information and evidence") and added 38 U.S.C. § 5103A ("Duty to assist claimants").  VCAA § 3(a), 114 Stat. at 2096-98.  The Court subsequently issued its opinion in the *Holliday* case, wherein the Court held "that all provisions of the VCAA are potentially applicable to claims pending on the date of the VCAA's enactment." *Holliday v. Principi*, 14 Vet.App. 280, 286 (2001), *mot. for recons. denied*, 14 Vet.App. 327 (per curiam order), *mot. for full Court review denied*, 15 Vet.App. 21 (2001) (en banc order).  Subsequent to the VCAA's enactment and this Court's decision in *Holliday, supra,* the Federal Circuit issued two opinions addressing retroactive application of the notice and assistance requirements set forth in VCAA section 3(a).  As to cases pending before the Federal Circuit at the time of the VCAA's enactment, that court held that section 3(a) (amending 38 U.S.C. §§ 5102, 5103, and 5103A) is not applicable. *Bernklau v. Principi*, 291 F.3d 795, 803-06 (Fed. Cir. 2002); *Dyment v. Principi*, 287 F.3d 1377, 1385 (Fed. Cir. 2002).  This Court applied those holdings to cases that were pending before it on the VCAA's enactment date.  *See Stephens v. Principi*, 16 Vet.App. 191, 193 (2002) (per curiam order); *Shoffner v. Principi*, 16 Vet.App. 208, 215 (2002).

In this case, the appellant filed his NOA on December 18, 2000, seeking review of the August 21, 2000, BVA decision.  Pursuant to the Court's holding in *Juarez v. Principi*, the claim denied by the August 2000 BVA decision was still pending before VA as of the date of the VCAA's enactment and, thus, the VCAA is applicable to the appellant's claim. *Juarez,* 16 Vet.App. 518, 521 (2002) (remanding claim pursuant to *Holliday*, *supra*, "[b]ecause, as of the November 9, 2000, enactment of the VCAA, the 120-day judicial-appeal period had not yet expired and the appellant had not filed an NOA, [and, therefore,] the claims denied by the September 2000 BVA decision were still pending before VA").  As noted above, the parties agree that the appellant, represented by counsel here, should be permitted to waive this Court's consideration on appeal of any VCAA rights that he might have.  *See Janssen v. Principi*, 15 Vet.App. 370, 374 (2001) (holding that claimant

represented by counsel may waive Court consideration on appeal of VCAA protections "if that is his or her clearly stated, informed, and voluntary desire").  Because we will reverse the Board decision, however, we need not address that issue.

### B.  Applicable Law and Regulation

The following are the principal statutory and regulatory provisions involved in the issues on appeal.  Section 1111 of title 38 of the U.S. Code provides:

> **§ 1111.  Presumption of sound condition**
>
> For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111.  Section 1153 of title 38 of the U.S. Code provides:

> **§ 1153 Aggravation**
>
> A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153.  Regulatory § 3.304(b) provides:

> **§ 3.304  Direct Service Connection; wartime and peacetime.**
>
> . . . .
>
> (b)  *Presumption of Soundness*.  The veteran will be considered to have been in sound condition when examined, accepted and enrolled for service, except as to defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto.  Only such conditions as are recorded in examination reports are to be considered as noted.

38 C.F.R. 3.304(b) (2002). Regulatory §3.306(b) provides:

**§ 3.306  Direct Service Connection; wartime and peacetime.**

(a)  *General.*  A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

(b) *Wartime service; peacetime service after December 31, 1946.*  Clear and unmistakable evidence (obvious or manifest) is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service.  This includes medical facts and principles which may be considered to determine whether the increase is due to the natural progress of the condition.  Aggravation may not be conceded where the disability underwent no increase in severity during service on the basis of all the evidence of record pertaining to the manifestations of the disability prior to, during and subsequent to service.

38 C.F.R. 3.306(a), (b) (2002).

### C.  Section 1111 and Regulatory § 3.304(b)

### 1.  Judicial Notice of Jordan Pleadings

The parties urge the Court to take judicial notice of the October 17, 2002, *Jordan* joint motion and November 18, 2002, subsequent pleadings.  Joint Resp. at 3.  The Court may take judicial notice of "'whatever is generally known within [its] jurisdiction[].'" *Brannon v. Derwinski*, 1 Vet.App. 314, 316 (1991); *see Shephard v. Gober*, 10 Vet.App. 486, 487 (1997) (taking judicial notice of ROA and pleadings filed in concurrent cases); *see generally MacMillan Bloedel Ltd. v. Flintkote Co.*, 760 F.2d 580, 587 (5th Cir. 1985) (upholding decision of district court to take "judicial notice of related proceedings and records in cases before the same court"); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) (upholding decision of district court to take judicial notice of prior litigation before it because "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it").  In this case, we will take judicial notice of the October 17, 2002, *Jordan* joint motion and November 18, 2002, subsequent pleadings because both cases raise the question of the proper

11

interpretation of sections 1111 and 1153 and the validity of the pertinent part of 38 C.F.R. § 3.304(b) under that interpretation.

In the parties' January 2003 joint response, the Secretary joined with the appellant, as he also ultimately did in *Jordan*, *Jordan* Joint Mot. at 11, in urging that the Court "invalidate 38 C.F.R. § 3.304(b), to the extent that it is not consistent with [section] 1111." Joint Resp. at 4. For the reasons set forth below, however, the Court will decline the Secretary's highly unusual invitation to invalidate in part his own regulation in § 3.304(b).

## *2. Section 1111*

In the *Jordan* joint motion for reconsideration, the parties advised the Court of newly discovered legislative history in connection with the 1943 enactment of section 9 of Public Law 78-144, as well as of a 1944 opinion of the chief legal officer of the Veterans' Administration, then called the Solicitor, interpreting that provision. Joint Mot. at 2. The *Jordan* joint motion and the Secretary's November 18, 2002, response to the Court's November 1, 2002, order in *Jordan* include material from a 1943 Senate committee report and a floor debate in the House of Representatives not made available to the Court before submission of the *Jordan* joint motion. Joint Mot. at 3-10; Sec'y Nov. 18, 2002, Resp. at Exhibit (Ex.) B (S. REP. NO. 403-78 (1943) [hereinafter 1943 S. REP.]). At that time, the applicable statutory provision, Veterans Regulation No. 1(a) (Reg. 1(a)), set forth the presumption of soundness:

> That for the purposes of paragraph I(a) hereof every person employed in the active military or naval service for 90 days or more, shall be taken to have been in sound condition when examined, accepted and enrolled for service except as to defects, infirmities or disorders noted at time of examination, acceptance and enrollment, or where evidence, or medical judgment is such as to warrant a finding that the injury or disease existed prior to acceptance and enrollment.

Reg. 1(a), Part I, para. I(b), 38 U.S.C.A. app. ch. 12. The Senate committee report contained an analysis of the bill as it had been passed by the House. That report indicated that the House had made the presumption of sound condition irrebuttable (as it had apparently been in section 200 of the World War Veterans' Act, 1924, as amended) by removing the provision for rebuttal of that presumption by evidence or medical judgment. 1943 S. REP. at 2, 9. That report also contained the

following statement by the Administrator of Veterans' Affairs (the predecessor of the Secretary of Veterans Affairs) as to the House-passed amendment:

> [I]t is the view of the Veterans' Administration that elimination of all provisions for rebuttal of the presumption of soundness except as to defects, infirmities, or disorders noted at time of examination, acceptance, and enrollment, is too far-reaching and cannot be justified. Even with the greatest of care, medical officers in the armed forces cannot possibly discover all existing diseases or disabilities and since compensation or pension is payable for aggravation of preexisting disabilities under Veterans Regulation No. 1(a), as amended, it seems only fair that the Government should be properly safeguarded so that payment of compensation or pension will be made only for disabilities incurred in service, or aggravation of disabilities which the person had when he entered the service, even though such disabilities may not have been noted at the time of examination, acceptance, or enrollment.

1943 S. REP. at 6. The Administrator then recommended to the Senate committee the insertion into the statute of "or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment." *Ibid*. The committee not only added this language, thereby making the presumption of soundness "rebuttable", but also added "'and was not aggravated by such active military or naval service' to make clear the intention to preserve the right in aggravation cases." *Id.* at 2.

When the Senate-amended bill returned to the House for consideration, the "not aggravated" language was a specific focus of debate. The following exchange occurred between Representative Judd and Representative Rankin, then the Chairman of the House Committee on Veterans' Affairs:

> Mr. JUDD. I think it is much better as it is except for one word, and I admit I do not know how to correct it. That word "aggravate" is administratively impossible. How can a doctor prove that a thing has not been aggravated by the man's service, or how many veterans will ever admit that it was not aggravated? "Aggravate" is a matter of degree, and usually impossible to measure.
>
> Mr. RANKIN. I understand.
>
> Mr. JUDD. I do not know how any doctor is going to be able to prove one way or the other.

Mr. RANKIN.  I will say to the gentleman that the word "aggravate" is now sanctified by time and usage.  It has been in the veterans' law ever since the last World War.  If a man went into the service in the last war with a disability and that disability was aggravated by his service his disability was held to be service-connected.  For instance, we will take a case in the present war.  A man comes in with a nervous tendency that is not pronounced enough to cause the Army to reject him, or the Navy to reject him, but he goes through Pearl Harbor or he is on a vessel that is bombed and men are killed all around him and the ship is blown to pieces[;] it might aggravate that disability without touching him.  It might aggravate his condition to such an extent that he would be a total nervous wreck.  Then he should be entitled to hospital care and such other benefits as are provided for service-connected disabilities.

Mr. JUDD.  I think the gentlemen is right in agreeing to make this bill provide the burden of proof shall be upon the Government to show that the condition did exist previous to entry into service, rather than having the burden of proof on the veteran to show that it did not exist before he entered the service.  That is the fair thing to do, just like in baseball where a tie is decided in favor of the runner.  There ought to be a presumption in favor of the veteran in this case as well.

But, with the word aggravated in there it is going to be almost impossible ever to keep some from getting pensions that ought not to get them.

Mr. RANKIN.  So far as the word aggravated is concerned, as a practicable proposition, it is not subject to a doctor['s] technical diagnosis or doctor['s] medical terminology, as used by an experienced physician such as the gentleman from Minnesota would give it in writing up his report on a special case involving a technical diagnosis.

Mr. JUDD.  I understand.

Sec'y Nov. 18, 2002, Resp., Ex. C (1943 CONG. REC. 7165 (1943)).

Subsequently, on February 7, 1944, the VA Solicitor issued an opinion contemporaneous with the enactment of the new language in section 9 of the new Public Law.  That opinion interpreted the new section, in pertinent part, as follows:

14

As to noted disabilities the section is silent as to how the question of aggravation shall be adjudicated. However, as to those defects or disorders which were not noted but where clear and unmistakable evidence demonstrates that they existed prior to acceptance and enrollment the section, as amended, requires that any finding to the effect such preexisting defect or disorder was not aggravated must be demonstrated by clear and unmistakable evidence. In other words, as far as the specific language of the amendment is concerned, *the only cases in which aggravation must be rebutted by clear and unmistakable evidence are those in which the defect or disorder was not noted*. As to noted disabilities a specific finding that the increase is due to the natural progress of the disease as provided in 1 (a), Part I, Veterans Regulation 1 (a), is sufficient to deny the claim.

. . . .

*The mandate of the statute as to the manner in which aggravation must be refuted in those cases where there was a pre-existing injury or disease not noted at time or enlistment may be said to create a rebuttable presumption of soundness with a provision that even where rebutted by clear and unmistakable evidence, there is a presumption of aggravation which itself is rebuttable but only by clear and unmistakable evidence.* To this extent clearly[,] Paragraph 1 (d) relating to aggravation of a disease or injury pre-existing at enlistment or induction is modified.

. . . .

. . . The matter really resolves itself into prescribing administratively what proof is acceptable and *I can seen no valid reason, legal or otherwise, for the Administrator attempting to differentiate as between 1(d)* [now section 1153] *and 9(b)* [now section 1111]*, especially when* as has been represented, unless such practice is adopted[,] *the administrative difficulties presented will be so confounding as to impede and forestall an effective and expeditious administration of the law*. Further, since the principles relied upon formerly in both section 1(b) and (d) [now section 1153] were limited, if not eliminated, by the amendment to (b), it would seem the [better] part of wisdom – even though literally not requisite under accepted rules of construction – to approximate the permissive procedures under (d) [now section 1153] to those required by (b) as amended. If there were any doubt as to this, the legislative history, both written and otherwise, leaves no doubt as to the purpose of the legislators to establish service connection by way of aggravation of

15

a pre-existing disability, noted or not noted, if the Government later discharged the person for such disability. The law should be administered in light of such purpose, even though one may innately harbor reservations as to the soundness of the underlying reasons.

Subject to the above observations, it seems to me that your question may be answered in the affirmative, namely, that *where the requisite proof is available a [sic] showing that the person's condition on discharge was the same as at time of enlistment or induction, such showing would constitute clear and unmistakable evidence that there was no aggravation of his disability. This would be true either under 1 (d)* [now section 1153] *or 9 (b)* [now section 1111]*.*

Sec'y Nov. 18, 2002 Resp., Ex. F (72 Op. Sol. 298, 300-02 (1944)) (emphasis added).

The foregoing materials provide justification for the parties' position that § 3.304(b) conflicts with the section 1111 presumption of sound condition. The regulatory history of § 3.304(b), however, is not quite so persuasive.

### 3. 38 C.F.R. § 3.304(b)

There are numerous factors that have led the Court to the conclusion that, rather than invalidate § 3.304(b), we should instead send this issue back to the Secretary to resolve. Although the legislative history of section 1111 is well documented, *see* part III.B.2., above, the regulatory history of § 3.304(b) is more enlightening for what it does *not* provide than for what it does provide.

The implementing regulation for the forerunner of section 1111 was found in VA Regulation 1063 (1946). Paragraph (B) of that regulation specifically included the "not aggravated" clause consistent with the 1943 Public Law:

(B) For the purposes of paragraph 1(a), Part I, Veterans Regulation No. 1(a), as amended July 4, 1943, every person employed in active service shall be taken to have been in sound condition when examined, accepted and enrolled for service except as to defects, infirmities or disorders noted at the time of the examination or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment *and was not aggravated by such service*.

Sec'y Nov. 18, 2002, Resp. at Ex. G (emphasis added). The crucial "not aggravated" language was repeated in paragraph (D), which provided in full:

> (D) "Clear and unmistakable" means obvious or manifest. Accordingly, evidence which makes it obvious or manifest, [sic] that the injury or disease under consideration existed prior to acceptance and enrollment for service will satisfy the requirements of the statute. The requirement of the law is that claims to which the above cited presumptions apply may be denied only on the basis of evidence which clearly and unmistakably demonstrates that the disease did not originate in service, or, *if increased in service, was not aggravated thereby*.

*Ibid.* (emphasis added). Further clouding the picture regarding the closing reference in the above quotation to "increased in service" was paragraph (I), which provided, in pertinent part, the following as to "increase in service", a factor that had not been addressed at all in the 1943 Public Law:

> (I) Under Regulation I (a), Part I, paragraphs 1(a), (b) and (d), as amended July 13, 1943, injury or disease, apart from misconduct disease, noted prior to service or shown by clear and unmistakable evidence, including medical facts and principles, to have had inception prior to enlistment *will be conceded to have been aggravated where such disability underwent an increase in severity* during service unless such increase in severity is shown by clear and unmistakable evidence, including medical facts and principles, to have been due to the natural progress of the disease. Aggravation of a disability noted prior to service or shown by clear and unmistakable evidence, including medical facts and principles, to have had inception prior to enlistment *may not be conceded where the disability underwent no increase in severity* during service on the basis of all the evidence of record pertaining to the manifestations of such disability prior to, during and subsequent to service. . . .

*Ibid.* (emphasis added). As the analysis below will show, the italicized language as to "increase in service" does not mesh with the sections 1111/1153 issues raised by the parties.

In 1949, VA Regulation 1063 was codified into 38 C.F.R. § 3.63; paragraphs (B), (D), and (I) in that regulation were identical to the 1946 provisions quoted above. 38 C.F.R. § 3.63 (1949). Although there were intervening changes to these § 3.63 paragraphs between 1949 and 1956, none of the changes were pertinent to the language of concern at this point. In February 1961, VA

17

promulgated a mammoth recodification of title 38 of the C.F.R. Inexplicably, the language "and was not aggravated by service" disappeared from the then-new § 3.304 and most of what had been paragraph (D) was dropped. 38 C.F.R. § 3.304 (Supp. 1962). The Federal Register contains no explanation for the language deletions; it contains only the recodified title 38, without any explanation as to the reason for the recodification. *See* 26 Fed. Reg. 1561 (Feb. 24, 1961). In what appears to be a VA internal document, the then-new § 3.304(b) and § 3.306(b) were described as a "Restatement of VA Regulation 1063 (B), (D), and (E)" and as a "Restatement of VA Regulation 1063 (I)", respectively; also, § 3.306(a) was explained as a "Restatement of VA Regulation 1063 (I)." Sec'y Nov. 18, 2002, Resp. at Ex. K (VA C & P Transmittal Sheet 209). Regulation § 3.304(b) and § 3.306(b) have not been significantly revised since 1961.

Hence, the initial VA regulations adopted to implement the 1943 Public Law carried the "not aggravated" add-on as part of the forerunner of § 3.304(b) for *15 years* until that language mysteriously disappeared in what was denominated a technical recodification. *See Kilpatrick v. Principi*, 327 F.3d 1375, 1382 (Fed. Cir. 2003) (reiterating with citations "the venerable principle that it is improper to interpret a codification as making substantive changes in the law absent a clear indication in the legislative history"). The parties failed to call this language disappearance to the Court's attention in either the *Jordan* or *Cotant* pleadings. (The Court notes that the Secretary merely stated: "The provisions in §§ 3.304, 3.306 have not undergone any significant change *since* 1961." Sec'y Nov. 18, 2002, *Jordan* Resp. at 5 (emphasis added)). Additionally, the sentence beginning "Aggravation may not be conceded" in § 3.306(b), to which regulation that language was transferred in the 1961 recodification of title 38 of the C.F.R., appears totally superfluous in the present text of the regulation, given the preceding sentence *requiring* an "increase in severity"; the sentence made sense only in the context of the "and was not aggravated" language that was part of the 1949 wartime presumption of sound condition. Yet, the parties, although calling attention to what they perceived as "an apparent conflict" between the 1944 Solicitor's opinion and the "increase in severity language", Sec'y Nov. 18, 2002, *Jordan* Resp. at 5, also failed to explain how the Court could invalidate only § 3.304(b) without also addressing the requirement of an increase in severity that § 3.306(b) appears to require in wartime (and post-1947) cases and the apparent conflict with what the parties assert section 1111 means (conceivably the last two paragraphs of the Solicitor's

18

1944 opinion quoted in part III., C.2., above, provide some enlightenment on this perceived disconnect).

In addition, the Court notes that were it to have applied section 1111 as the parties have urged, it would appear that the result would not be a finding of aggravation but rather a finding that the veteran entered service in sound condition by virtue of the presumption of sound condition not having been rebutted. That is literally what section 1111 appears to provide for, not a finding of aggravation. This in turn would lead to somewhat anomalous results as between noted-at-entry and not-noted-at-entry preexisting conditions. As a result of 38 C.F.R. § 3.322(a) and § 4.22, the rating of a condition found to be service connected on the basis of aggravation is derived by "deduct[ing] from the present degree of disability the degree, *if ascertainable*, of the disability existing at the time of entrance into active service." 38 C.F.R. §§ 3.322(a), 4.22 (2002). In a case where, for example, a preexisting condition was noted and rated at 20% at entry, only a 50% rating would be awarded if that condition were later determined to have increased in severity to a 70% rating. However, if the preexistence were not noted at entry, then a 70% rating would be awarded *unless* the rating at entry were ascertainable – something that would appear to be a relatively rare phenonenom for a not-noted-at-entry condition. *See* 38 C.F.R. §§ 3.322(a), 4.22. Under §§ 3.322(a) and 4.22, however, in the case of a 100% current disability rating, no deduction would be made; so, for example, a veteran with a condition that was 50% disabling at entry and is rated 100% now would get a 100% (not a 50%) rating.

Because these potential disparities might be considered "absurd" results, they provide still further reason why the Court is presently not inclined to make a firm holding as to the interpretation of section 1111 and the invalidation of § 3.304(b) urged by the parties. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68-69 (1994) ("Some applications of respondents' position [as to the proper construction of Protection of Children Against Sexual Exploitation Act] would produce results that were not merely odd, but positively absurd. . . . We do not assume that Congress, in passing laws, intended such results."); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989); *United States v. Am. Trucking Ass'ns, Inc.*, 310 U.S. 534, 543 (1940); *Allen (William) v. Principi*, 237 F.3d 1368, 1375-76 (Fed. Cir. 2001); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001); *Holliday*, 14 Vet.App. at 285 (citing

19

precedent regarding need to avoid absurd result when interpreting statute); *Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Faust v. West*, 13 Vet.App. 342, 350 (2000); *Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc); *Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995); *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991).

Accordingly, the Court has determined that the problems with the Secretary's regulations run far deeper than the limited § 3.304(b) remedy sought by the parties. Because, as concluded in part III.D., below, the Court need not deal with § 3.304(b) in order to review the BVA decision on appeal and provide the remedy sought by the appellant, the Court will not address definitively the section 1111/1153 issues raised by the parties and the extent to which § 3.304(b) may not be consistent with the statutory scheme. Instead, the task of straightening out this extraordinarily complicated and tangled web of apparently conflicting statutory and regulatory provisions will be left to the Secretary. *See Zang v. Derwinski*, 8 Vet.App. 246, 255 (1995) (Steinberg, J., separate views) (citing, inter alia, *Talley v. Derwinski*, 2 Vet.App. 282, 285-86, 288 (1992), and *Hattlestad v. Derwinski*, 1 Vet.App. 164, 167 (1991), referring to "'confusing tapestry' of VA regulations which should be the subject of review and reevaluation by the Secretary"); *see also Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) (holding that although this Court "may hear legal arguments raised for the first time with regard to a claim that is properly before the Court, it is not compelled to do so in every instance"); *cf.* 57 Fed. Reg. 59, 296 (Dec. 15, 1992) (issuing final regulation in order to conform § 3.306 to 1974 statutory amendment regarding service after December 31, 1946).

### D. The Board's Application of § 3.306 to the Appellant's Claim

As set forth in part III.B.2., above, regulatory § 3.306(b) provides, inter alia, that clear and unmistakable evidence is required to rebut the presumption of aggravation where the preservice disability underwent an increase in severity during service. 38 C.F.R. § 3.306(b). The determination whether the record contained clear and unmistakable evidence of sufficient weight to rebut the presumption of aggravation under § 3.306(b) is subject to de novo review by this Court. *See Crowe v. Brown,* 7 Vet.App. 238, 247 (1994) (citing *Bagby v. Derwinski*, 1 Vet.App. 225, 227 (1991); *see also Miller v. West*, 11 Vet.App. 345, 347 (1998) (citing *Bagby, supra*, and applying de novo review to review of rebuttal of section 1111 presumption of sound condition by clear and unmistakable evidence); *Junstrom v. Brown*, 6 Vet.App. 264, 266 (1994); *Kinnaman v. Principi*, 4 Vet.App. 20,

20

27 (1993); *cf. Doran v. Brown*, 6 Vet.App. 283, 286 (1994) (concluding that 38 U.S.C. § 7261(a)(4) "clearly erroneous" standard of review is applicable to Board determination under 38 U.S.C. § 1153 and 38 C.F.R. § 3.306(a) that preexisting condition had not increased in severity during service). The clear-and-unmistakable-evidence standard is an "onerous" one, *Laposky v. Brown,* 4 Vet.App. 331, 334 (1993) (citing *Akins v. Derwinski*, 1 Vet.App. 228, 232 (1991)), and requires that the no-aggravation result be "undebatable", *Vanerson v. West*, 12 Vet.App. 254, 258, 261 (1999); *id.* at 263 (Nebeker, C.J., concurring in part and dissenting in part).

In this case, the Board first found that the appellant's preexisting hip condition had increased in severity during service, thereby triggering a presumption of aggravation under § 3.306. R. at 6-7. The Board determined that more "weight" should be given to the opinion of the VA examiner, Dr. Rangitsch, than that of the veteran's private physician, Dr. Gentry, because that VA examiner's opinion "was preceded by a thorough clinical examination" and a review of the veteran's SMRs, and the Board thus found that the presumption of aggravation had been rebutted because Dr. Rangitsch's opinion "[rose] to the higher level of clear and unmistakable evidence" necessary to rebut the presumption of aggravation. R. at 7. The Court concludes that this determination of the Board was erroneous.

First, the Board did not reject as lacking in credibility Dr. Gentry's opinion that the veteran's condition was aggravated by his activities in service. Rather, it gave "***more*** weight to the June 1998 VA examiner's opinion", that of Dr. Rangitsch. R. at 7 (emphasis added). Second, Dr. Rangitsch's rather equivocal opinion, even standing alone, was far from the kind of unconditional evidence necessary to meet the very demanding clear-and-unmistakable-evidence standard. *See Vanerson*, *supra*; *see also Harris v. West*, 11 Vet.App. 456, 462 (1998) (holding that physician's unequivocal and uncontradicted opinion regarding the appellant's disability constituted clear and unmistakable evidence that rebutted presumptions of soundness and aggravation). Indeed, Dr. Rangitsch stated his opinion with five distinct qualifications: (1) "As to whether this [DJD of the right hip] is accelerated by his military service, ***it is impossible to say***"; (2) "[c]ertainly the activities he performed ***could have accelerated*** his hip disease"; (3) "it is ***most likely*** that the natural process [sic] of the disease would have resulted in hi[s] developing this hip problem even at an early age"; (4) "I would feel it is ***more likely*** that the hip disease was due to the underlying Perthes disease and the

21

natural processes of aging as the disease would progress"; and (5) the DJD of the right hip was "not *significantly* aggravated by his service-related activities". R. at 605 (emphasis added). Moreover, Dr. Rangitsch reiterated two of the above qualifications in his January 2000 supplemental report. R. at 609 ("most likely" and "not significantly aggravated"). Third, Dr. Gentry opined: "Mike Cotant's medical records . . . reveal [that] he had Legg[-]Perthes disease of the right hip before he joined the military service, the result of which left him with significant degenerative joint changes of the hip which in my opinion was aggravated by the activities he did in the service." R. at 578.

Reviewing the evidence de novo under *Bagby*, *supra*, the Court holds that the record does not provide clear and unmistakable evidence that the appellant's increase in his right-hip disability was due to the natural progression of his DJD of the right hip. *See* 38 C.F.R. § 3.306(b); *Crowe* and *Bagby,* both *supra.* Accordingly, because the Board found that clear and unmistakable evidence demonstrated that the appellant's right-hip disability preexisted service and found also that that disability had increased in severity during service (R. at 3,6,7), findings not challenged on appeal, we hold that the evidence as to natural progress of that preexisting condition does not show clearly and unmistakably that that increase found by the Board was "due to the natural progress of the disease", 38 C.F.R. § 3.306(a), and, therefore, that that preexisting disability must be considered to have been aggravated "by . . . service." *Ibid.* We must thus reverse the Board conclusion as to aggravation and direct that a finding of aggravation be entered. 38 C.F.R. § 3.306(b); *see Crowe* and *Bagby*, both *supra*.

In reaching the above decision to reverse as to aggravation in this case, we are mindful of the principles so cogently set forth by our recently retired colleague, Judge Holdaway, in *Vanerson*:

> Pursuant to the duty to assist, the Secretary is required to assist the claimant "in developing the facts pertinent to the claim"; that duty must be performed without regard to whether the evidence supports or detracts from the claim. Once the claim has been developed, the Secretary is required to make an impartial decision affording the claimant the benefit of the doubt where the evidence is in equipoise. The typical parley of "basic facts" and "counter proof" involved with presumptions in an adversarial proceeding does not fit the VA adjudication system where the very adjudicator, who is charged with assisting in the development of the claim, would also bear the burden of rebutting the presumption. . . .

> Additionally, the standard of proof for rebutting the presumption of soundness is not merely evidence that is cogent and compelling, i.e., a sufficient showing, but evidence that is clear and unmistakable, i.e., undebatable. . . . [and] the question is not whether the Secretary has sustained a burden of producing evidence, but whether the evidence as a whole, clearly and unmistakably demonstrates that the injury or disease existed prior to service.

*Vanerson*, 12 Vet.App. at 261. Here, the same standard of proof applies to the evidence as to natural progression of the condition for purposes of assessing aggravation, and we have no doubt that the evidence fails to demonstrate clearly and unmistakably – that is, undebatably – that the increase in severity during service of the veteran's preexisting right hip condition was not due to the natural progress of the disease. *See* 38 C.F.R. § 3.306(b); *Crowe* and *Bagby*, both *supra*. Accordingly, having concluded that the appellant is entitled to the § 3.306 presumption of aggravation, we turn to the issue of service connection.

### E. Service Connection

In order for a preexisting condition aggravated in service to be found to be service connected, the three so-called *Caluza* elements must be satisfied. *See Rose v. Principi*, 11 Vet.App. 169, 172 (1998) (applying three elements for service-connection claim from *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (holding that claim required "competent evidence [(1)] of current disability (a medical diagnosis)[,] . . . [(2)] of incurrence or aggravation of a disease or injury in service (lay or medical evidence)[,] . . . and [(3)] of a nexus between the in-service injury or disease and the current disability (medical evidence)"), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table)). The determination of service connection is a finding of fact determined under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Rose*, 11 Vet.App. at 172; *Russo v. Brown*, 9 Vet.App. 46, 53 (1996). The last *Caluza* element, nexus, may be shown under 38 C.F.R. § 3.303(b), as discussed below, by chronicity or continuity of symptomotology. *See Rose*, 11 Vet.App. at 171. Under § 3.303(b), if "chronic disease [is] shown as such in service (or within the presumpt[ion] period under § 3.307) so as to permit a finding of service connection, [then] subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes"; the regulation further declares that "[w]hen the disease identity is established . . . , there is no requirement of [an] evidentiary showing

23

of continuity." 38 C.F.R. § 3.303(b) (2002); *see Savage v. Gober,* 10 Vet.App. 488, 494-95, 498 (1997).

The Board addressed two of the *Caluza* elements of service connection. As to the first *Caluza* element, the Board found sufficient evidence of a current disability to conclude that the service-connection claim was well grounded under then-section 5107(a) (the requirement of a well-grounded claim previously set forth in 38 U.S.C. § 5107(a) was repealed by VCAA § 4, 114 Stat. at 2098). R. at 3 (finding "a current medical diagnosis of [right-hip] disability"). Although there appears to be no evidence after January 2000 pertaining to current disability, this Board finding and the medical evidence of a disability relatively contemporaneous with the BVA decision (R. at 605, 609) would satisfy the *Caluza* requirement of current disability, especially because there is no medical evidence of record to the contrary and no dispute that the veteran had the disease at that time. *See Caffrey v. Brown*, 6 Vet.App. 377, 381 (1994) (assessing contemporaneousness of medical diagnosis in terms of date of BVA decision and concluding that medical examination conducted 23 months prior was not contemporaneous with BVA decision). As to the second *Caluza* element, our holding here provides the finding of in-service aggravation of a preexisting right-hip condition, which the Board characterized as "right[-]hip arthritis". R. at 6.

As to the third *Caluza* element of nexus, however, even though the veteran applied for service connection on September 21, 1992, one month after his separation examination, there appears to be no medical evidence in the record linking the current disability to the in-service aggravation of his condition. *Cf. Hampton v. Gober*, 10 Vet.App. 481 (1997) (holding that *Caluza* nexus requirement was met by evidence of record regarding separation examination and VA examination two months later, both of which referenced bilateral knee condition). In this case, a medical nexus opinion is lacking; that lack of medical evidence of nexus, however, is not fatal to the appellant's service-connection claim.

Regulation § 3.303(b), relating to chronicity or continuity of symptomatology, "provides an *alternative* method of demonstrating entitlement to service connection." *Rose*, 11 Vet.App. at 171 (citing *Savage*, 10 Vet.App. at 495-96 (concluding that § 3.303(b) provides a "substitute way of showing in-service incurrence and medical nexus for purposes of well grounding . . . a claim"); 38 C.F.R. § 3.309(a) (2002) ("[a]rthritis" denominated as "chronic disease" for purposes of one-year

24

presumption of service connection established by 38 C.F.R. § 3.307(a)(2) for chronic diseases). Because the question of continuity of symptomatology or chronicity for purposes of determining service connection of the veteran's currently diagnosed "degenerative arthritis of the right hip" (R. at 605) has not been addressed by the Board, the Court will remand the question of service connection to the Board for it to address in the first instance. *See, e.g., Myers v. Principi*, 16 Vet.App. 228, 236 (2002) (remanding effective-date issue to Board because of possibility that "not all of the material that may bear on this question was included in the ROA").

## IV. Conclusion

Upon consideration of the foregoing analysis, the ROA, and the submissions of the parties here and those from *Jordan* of which we have taken judicial notice, the Court reverses the August 21, 2000, BVA decision on the question of aggravation and remands the matter for the entry of a finding of aggravation and a determination (1) of the issue of service connection and (2) if service connection is awarded, of the appropriate rating and effective date, in a decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1111, 5100-5103, 5103A, 5106, 5107, 5110(a), 7104(a), (d)(1); 38 C.F.R. § 3.306(b); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991) – all consistent with this opinion and in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or the Court). *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995). On remand, the appellant will be free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order) (concluding that an appellant is entitled, until 90 days after Board mails postremand notice to appellant, to submit additional evidence and argument or to request hearing on appeal at which appellant may submit new evidence), and such evidence and argument must be considered on remand. *See Kay v. Principi,* 16 Vet.App. 529, 534 (2002). The Court notes that a remand by this Court and by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following

the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new NOA with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

 REVERSED AND REMANDED.