Citation Nr: 1237355 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 07-10 175A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for a right hand and wrist disability.

2. Entitlement to service connection for a low back disability.

3. Entitlement to service connection for bilateral hearing loss.

4. Entitlement to service connection for residuals from a fracture of the fourth toe of the left foot. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

C. C. Dale, Counsel
INTRODUCTION

The Veteran served on active duty from August 1985 to August 2005. 

This matter comes before the Board of Veterans' Appeals (BVA or Board) on appeal from a November 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Baltimore, Maryland. The RO, in pertinent part, denied the benefits sought on appeal. 

In his original August 2005 claim, the Veteran sought service connection for a broken toe of the right foot. Service treatment records dated in May 2004 include treatment for fracture of the fourth toe of the left foot. Accordingly, the RO adjudicated a claim for a broken left toe, which the Veteran appealed. In March 2012, the RO awarded service connection for ingrown toenail removal as a residual of a great toe fracture of the left foot and did not issue a supplemental statement of the case regarding fracture residuals of the fourth left toe. In the October 2012 informal hearing presentation, the Veteran, through his representative, indicated that he desired to continue an appeal for a broken left toe. The issue of service connection for broken fourth left toe remains on appeal. 

In his August 2005 claim, the Veteran lists a "right hand untunnal" disorder as his claimed disability and the RO adjudicated the claim as a right hand disability. The March 2011 VA examination report for the right hand suggests that the Veteran has a right wrist disability, as opposed to a right hand disability. For purposes of the appeal, the Board will consider the claimed right hand disability to encompass a right wrist disability. See also Clemons v. Shinseki, 23 Vet. App. 1 (2009).

The Veteran originally requested a Central Office hearing before the Board; however, he later withdrew the request in November 2009. As such, there are no outstanding hearing requests of record. 38 C.F.R. § 20.702(e).

In June 2010, the Board remanded the appeal for additional development. In various rating decisions following the June 2010 remand, the RO granted service connection for left and right knee disabilities, a vision disorder, a right foot fallen arch, and residuals from bilateral ingrown great toe nail removal. As these rating actions result in a full grant of the benefit sought (i.e. service connection), these issues are no longer on appeal. 

A review of the Virtual VA paperless claims processing system does not show any pertinent records that are not already associated with the claims folder. 

The issues of service connection for a right hand and wrist disability and fracture residuals of the fourth toe of the left foot are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The Veteran has had a continuity of low back pain beginning in service and is current diagnosed with lumbar and thoracic arthritis as confirmed by X-ray studies. 

2. The Veteran does not have VA recognized hearing loss in either ear.


CONCLUSIONS OF LAW

1. The criteria for establishing service connection for a low back disability have been met. 38 U.S.C.A. §§ 1110, 1131, 1153, 1154, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.306, 3.307, 3.309 (2012).

2. The criteria for establishing service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1110, 1131, 1154, 5107(b) (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.385 (2012).





REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). 

As the Board is granting the claim for service connection for a low back disability, this claim is substantiated, and there are no further VCAA duties for it. Wensch v. Principi, 15 Vet App 362, 367-68 (2001); see also 38 U.S.C.A. § 5103A(a)(2) (Secretary not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim"); VAOPGCPREC 5-2004; 69 Fed. Reg. 59989 (2004) (the notice and duty to assist provisions of the VCAA do not apply to claims that could not be substantiated through such notice and assistance).

Proper notice from VA must inform the claimant of any information and medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

In addition, the notice requirements of the VCAA apply to all elements of a service-connection claim, including the degree of disability and the effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Further, this notice must include information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486. 

VCAA notice must be provided prior to an initial unfavorable decision on a claim by the RO. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004). Where complete notice is not timely accomplished, such error may be cured by issuance of a fully compliant notice, followed by readjudication of the claim. See Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); see also Prickett v. Nicholson, 20 Vet. App. 370, 376 (2006).

Here, regarding the hearing loss claim, the Veteran was sent a letter in September 2005 that provided information as to what evidence was required to substantiate the claim and of the division of responsibilities between VA and a claimant in developing an appeal. In March 2006, he was sent additional notification informing him of what type of information and evidence was needed to establish a disability rating and effective date. While this letter was furnished after the issuance of the appealed rating decision, the appeal was subsequently readjudicated in a Supplemental Statement of the Case issued in most recently issued in April 2012. This course of corrective action fulfills VA's notice requirements. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Accordingly, no further development is required with respect to the duty to notify.

Next, VA has a duty to assist the Veteran in the development of the claims. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The claims file contains the Veteran's service treatment records and VA treatment records in addition to various written statements submitted by the Veteran. The Board has carefully reviewed such statements and concludes that no available outstanding evidence has been identified. 

The Board additionally finds that the development indicated in the June 2010 remand has been completed. More specifically, as instructed, the RO sent the Veteran a communication asking that he identify all treatment providers relating to his claimed disabilities. No response was received. Additionally, the Veteran was afforded a March 2011 VA audiology examination to evaluate the nature and extent of his hearing loss. Following such development, a supplemental statement of the case was issued. 

The Board has also perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's bilateral hearing loss claim. 

For the above reasons, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist the Veteran in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Laws and regulations

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); 38 C.F.R. § 3.303. Service connection may also be established on a presumptive basis for certain disabilities, including degenerative arthritis, that were manifested following service. 38 C.F.R. §§ 3.307, 3.309. 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage, 10 Vet. App. 488, 495-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post- service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488, 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b).

The Federal Circuit has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence").

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 496 (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. Layno v. Brown, 6 Vet. App. 465, 469 (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")).

In relevant part, 38 U.S.C.A. 1154(a) (West 2002) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

(i) Low back disability

The record raises the issue of whether the Veteran had preexisting back disability prior to entrance into active service. In this regard, every Veteran shall be taken to have been in sound condition when examined, accepted and enrolled for service, except as to defects noted at the time of the examination, acceptance and enrollment, or where clear and unmistakable evidence or medical judgment is such as to warrant a finding that the disease or injury existed before acceptance and enrollment, and was not aggravated by such service. 38 U.S.C.A. § 1111. 

In order to rebut the presumption of sound condition under 38 U.S.C. § 1111, VA must show by clear and unmistakable evidence both that the disease or injury existed prior to service, and that the disease or injury was not aggravated by service. Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004). 

To satisfy the second requirement for rebutting the presumption of soundness, VA must rebut a statutory presumption of aggravation by showing, by clear and unmistakable evidence, either that (1) there was no increase in disability during service, or (2) any increase in disability was "due to the natural progression" of the condition. Joyce v. Nicholson, 443 F.3d 845, 847 (Fed. Cir. 2006). 

On enlistment examination in August 1984, prior to entry into service, the Veteran endorsed a history of having recurrent back pain, which the examiner summarized as due to a childhood injury. Clinical evaluation of the spine, however, was normal. Because the Veteran's entrance examination in this case did not find residual evidence of a low back disability, the Veteran is entitled to the presumption of soundness under 38 U.S.C.A. § 1111. However, the Board must consider whether the presumption of soundness is rebutted by clear and unmistakable evidence. 

The record includes the Veteran's statements regarding back pain at the time he was examined prior to his entrance into service. Notably, the November 2011 VA examiner appears to have presumed that the Veteran had a preexisting back injury. However, the available evidence is insufficient to meet the onerous standard of clear and unmistakable evidence of a preexisting back disability. Vanerson v. West, 12 Vet. App. 254 (1999). For example, there is no documented treatment referable to the low back prior to service, and no other evidence to indicate a chronic preexisting disability. Hence, the Veteran is entitled to the presumption of soundness despite his reported childhood back injury. Thus, the question for consideration is whether a chronic low back disability was incurred in, rather than aggravated by, active service.

Service treatment records show that the Veteran sought treatment for low back pain on several occasions. In February 1999, he complained of left-sided back pain over the past week. He was given exercise instructions and medication. 

Emergency room (ER) records from December 2000 reflect that the Veteran was the driver in a motor vehicle accident (MVA). His automobile was rear ended. He sought treatment for neck and back pain, which he described as a diffuse ache. Clinical examination of the spine was normal, except for tenderness of the right paraspinous muscle. X-rays returned normal. 

In November 2004, the Veteran reported having low and mid back pain over the past two to three years and that it had recently flared over the past week. He tried many treatments, but it was only relieved by rest. The examiner also noted that the MVA may have increased his low back pain and recommended chiropractic care. Post-deployment records from June 2005 reflect continued chiropractic treatment; his symptoms were deemed stable. 
 
In August 2009, the Veteran had an initial consultation at the VA primary care clinic. His primary complaint was back pain. He attributed his back pain to an unspecified in-service injury. Clinical examination was unremarkable. The examiner referred the Veteran for chiropractic treatment. 

The Veteran was afforded a VA examination in March 2011. He reported having a history of back pain beginning in 1992 or 1993. He described having dull moderate lumbar pain on a daily basis. Upon clinical examination, the examiner observed a normal posture and gait. She noted lumbar flattening and painful motion. X-rays revealed normal findings for the lumbar spine and degenerative joint disease of the lower thoracic spine. The examiner diagnosed degenerative joint disease of the lower thoracic spine. She stated that she could not relate the current diagnosis to active service without resort to speculation. She explained that while the Veteran sought in-service treatment on multiple occasions for back pain, post-service x-rays were normal. In her opinion, attributing the in-service back strains to the current post service arthritis diagnosis would be speculative. 

VA reexamined the Veteran in November 2011. The examiner noted a history of an unspecified back injury in 1995 or 1997. He recited the pertinent service and post service treatment history. The Veteran reported that he currently had flare-ups of back pain on a daily basis. Clinical examination showed a slight list of the spine to the left without muscle spasms. Forward flexion was to 45 degrees, with painful motion beginning at 40 degrees. Neurological findings were unremarkable. MRI of the lumbar spine showed mild facet arthrosis within the lower lumbar spine most pronounced at L5-S1 with mild bilateral neural foraminal narrowing. The examiner diagnosed mild thoracic-lumbar degenerative changes with chronic low back pain. He opined that it is not as likely as not that the Veteran's back pain was worsened by service. He noted the December 2000 MVA injury, but concluded that the Veteran's back disability was not permanently worsened.

As explained above, although there are references to a childhood back injury, the clinical examination at entrance showed the Veteran's spine to be normal and the presumption of soundness attaches. 38 C.F.R. § 3.304. The record does not contain clear and unmistakable evidence to overturn the presumption of soundness. See id.; Vanerson, 12 Vet. App. 254 (1999). 

Service treatment records document several instances of back pain. Current VA treatment records and VA examination reports show that the Veteran currently has arthritis in his thoracic and lumbar spine. Accordingly, the remaining issue for consideration is whether there is sufficient evidence of a nexus to service. 38 C.F.R. §§ 3.303, 3.303(b), 3.307, 3.309.

There are two medical opinions of record. The March 2011 examiner expressed a speculative opinion with an accompanying explanation. However, it is not apparent whether she considered the presence of arthritis within a year of separation for presumptive service connection. 38 C.F.R. §§ 3.307, 3.309. Thus, her opinion is incomplete. The November 2011 examiner provided an opinion based upon an inaccurate factual premise of a preexisting back disability. For these reasons, the Board finds these opinions to be of low probative value. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Jones v. Shinseki, 23 Vet. App. 382, 389-91 (2010). 

The record shows that the Veteran was noted to have back strains in service, and he has provided reports of continuing symptoms. 38 C.F.R. § 3.303(b). He is competent to describe the nature and extent of his back pain. See Kahana v. Shinseki, 24 Vet. App. 428, 433, 438 (2011). His reports of a continuity of symptomatology following service are facially plausible and not otherwise inconsistent with evidence of record. Caluza, 7 Vet. App. 498 (Board may consider consistency and facial plausibility in weighing evidence). They are credible and hold substantial probative value. Id. The medical evidence confirms a current diagnosis of arthritis in his lumbar and thoracic spine. In summary, the Veteran has provided persuasive reports of a continuity of symptomatology beginning in service to meet the nexus requirement for service connection under 38 C.F.R. § 3.303(b). Accordingly, service connection for a low back disability, diagnosed as thoracic and lumbar arthritis, is granted. 38 C.F.R. §§ 3.303(b), 3.307, 3.309.

(ii) Bilateral hearing loss

Service treatment records dated in March 2003, reflect complaints of decreased hearing in the left ear. In August 2003, the Veteran reported left ear pain as related to sinus congestion. An audiogram from October 2003 reflected inconsistent responses, and the audiologist commented that the measured pure tone thresholds did not match the speech thresholds. 

In October 2009, the Veteran had a VA audiological consultation. He complained about difficulty hearing in his right ear. An otoscopy showed excessive cerumen in his right ear, which was removed. Air and bone conduction test results reflected hearing within normal limits for ears. The Veteran also had excellent speech recognition scores for both ears. 

The Veteran was afforded a VA examination in March 2011 with the following results:




HERTZ



500
1000
2000
3000
4000
RIGHT
20
20
20
15
15
LEFT
10
15
15
10
5

Speech audiometry revealed speech recognition ability of 96 percent in both ears. The examiner stated that hearing in both ears was normal. 

There is no other indication in the claims file of audiometric testing within the relevant period.

Thus, the evidence fails to reveal the Veteran currently suffers from a hearing loss disability pursuant to the provisions of 38 C.F.R. § 3.385. For the purposes of applying VA laws, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, and 4000 Hertz are 26 decibels or greater; or when the speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. The findings on the VA examination did not meet those requirements. Thus, he does not have a hearing loss disability for VA purposes.

Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. See 38 U.S.C.A. §§ 1110, 1131. In the absence of proof of present disability there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Degmetich v. Brown, 104 F.3d 1328 (1997) (38 U.S.C.A. § 1131 requires existence of present disability for VA compensation purposes); see also Wamhoff v. Brown, 8 Vet. App. 517, 521 
(1996). 

For the reasons set forth above, the claim for service connection for bilateral hearing loss must be denied. 

In reaching this conclusion the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim for service connection for hearing loss, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). 


ORDER

Service connection for bilateral hearing loss is denied. 

Service connection for a low back disability is granted. 


REMAND

The Board finds that additional development is necessary before the claimed right hand disability and fracture residuals of the fifth toe of the left foot may be reviewed on the merits. 

Regarding the right hand disability, the Veteran was afforded a March 2011 VA examination. Following clinical examination, the examiner declined to provide a diagnosis for the right hand. However, she commented that the Veteran had an unspecified "right wrist issue" which was described as either a ganglionic cyst versus tendon calcification. In addition, she noted possible nerve compression. 

In August 2011, a different VA examiner was contacted for an addendum medical opinion. The text of the opinion is unclear. The examiner refers to the February 1994 right wrist fracture, but does not provide further explanation for her opinion. On the whole, the opinion is inadequate for adjudication purposes. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning). Another medical examination is necessary to assess the nature and extent of the right wrist disability and its possible relationship to service. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (once VA undertakes the effort to provide an examination for a service-connection claim, even if not statutorily obligated to do so, it must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided); see also Hicks v. Brown, 8 Vet. App. 417, 422 (1995) (inadequate medical evaluation frustrates judicial review).

With respect to the fracture residuals of the fourth left toe, the March 2011 VA examiner identifies the fifth left toe as the fracture residual throughout her March 2011 report and determines that the fifth left toe is asymptomatic. Since it is not clear whether the examiner considered the fourth left toe, rather than the fifth, another VA examination is necessary to clarify the record. Id.

Ongoing private and VA treatment records should also be obtained. See 38 U.S.C.A. § 5103A(b), (c); 38 C.F.R. § 3.159(b); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim).

Accordingly, the case is REMANDED for the following action:

1. Obtain any relevant VA treatment records, since September 2009 and associate those records with the claims file.

2. Request that the Veteran identify any private medical treatment records for his right hand and wrist and residuals for left toe and furnish appropriate authorization for the release of private medical records. 

Take the necessary steps to obtain all records of VA treatment for these disabilities. 

Efforts to obtain VA records must continue until they are obtained, or it is reasonably certain that they do not exist or that further efforts would be futile.

If the Veteran fails to furnish any necessary releases for private treatment records, he should be advised to obtain the records and submit them to VA. 

If any requested records cannot be obtained, inform the Veteran of this fact, of the efforts made to obtain the records and of any additional efforts that will be made with regard to his appeals.

3. After all efforts have been exhausted to obtain and associate with the claims file any additional treatment records, schedule the Veteran for a right hand and wrist examination with an appropriate VA clinician. All indicated tests and studies should be conducted. 

The claims folder, including this remand and any relevant records contained in the Virtual VA system, must be sent to the examiner for review; consideration of such should be reflected in the completed examination report or in an addendum. 

Regarding the right hand and wrist, the examiner is directed to review the following service treatments records: February 1994 right wrist sprain and June 2005 records suggesting ulnar nerve entrapment of the right wrist. 

These service treatment records should be considered in addition to the Veteran's description of symptomatology and medical history during service. 

The examiner should answer the following question as definitively as possible: 

Is it at least as likely as not (50 percent probability or more) that the Veteran's current right hand and wrist disability (any disorder diagnosed since August 2005) had its onset in service or is otherwise the result of a disease or injury in service? 

A complete rationale for the opinion is necessary. 

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what if any additional evidence would be necessary before an opinion could be rendered. 

The absence of evidence of treatment for in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion. 

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. 

If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

4. After all efforts have been exhausted to obtain and associate with the claims file any additional treatment records, schedule the Veteran for left foot medical examination with an appropriate VA clinician. All indicated tests and studies should be conducted. 

The claims folder, including this remand and any relevant records contained in the Virtual VA system, must be sent to the examiner for review; consideration of such should be reflected in the completed examination report or in an addendum. 

Regarding the fourth left toe fracture residuals, the examiner is directed to review the May 2004 emergency room records documenting a fracture to the fourth toe of the left foot from an injury. 

These service treatment records should be considered, in addition to the Veteran's description of symptomatology and medical history during service. 

The examiner should answer the following question as definitively as possible: 

Is it at least as likely as not (50 percent probability or more) that the Veteran has any current residuals in his left foot from the May 2004 fracture of the fourth left toe (any disorder diagnosed since August 2005)? 

A complete rationale for the opinion is necessary. 

If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what if any additional evidence would be necessary before an opinion could be rendered. 

The absence of evidence of treatment for in the Veteran's service treatment records cannot, standing alone, serve as the basis for a negative opinion. 

The examiner is advised that the Veteran is competent to report his symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions. 

If the examiner rejects the Veteran's reports of symptomatology, he or she must provide a reason for doing so.

5. Following the above development, the RO/AMC should review the claims file and readjudicate the claims. If the benefits sought on appeal remain denied, the Veteran and his representative should be furnished a supplemental statement of the case and given the opportunity to respond thereto before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2011).



______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs